240

**TALLEY et al. v. HOWSLEY et al.**

No. 2338.

Court of Civil Appeals of Texas. Eastland.

March 12, 1943.

Rehearing Denied April 2, 1943.

Bryan, Stone, Wade & Agerton, of Fort Worth, for appellants.

O. R. Tipps, of Wichita Falls, and John Lee Smith and J. H. Banks, both of Throckmorton, for appellees.

FUNDERBURK, Justice.

Robert McKeichen, owner of quarter section 28—a tract of land in Throckmorton County—subject to certain indebtedness due to N. L. B. Davis, secured by deed of trust lien thereon, on July 10, 1925, conveyed by deed to W. K. Crawley an undivided one-half interest in the oil, gas and other minerals therein. On October 2, 1926, said Robert McKeichen conveyed by general warranty deed the remainder of said land, with the exception of "all of the mineral rights, including oil, gas and other minerals" therein, to Will McKeichen. Part of the consideration for the latter conveyance was the assumption by Will McKeichen of the payment of the balance due to N. L. B. Davis, secured by deed of trust lien upon the land, as aforesaid. Subsequently, following default in payment of the indebtedness assumed by Will McKeichen, Davis, the payee in said note and holder of the lien, brought suit against Robert McKeichen, Will McKeichen, and all assignees of the mineral interest which had been conveyed by Robert McKeichen to Crawley to foreclose his lien upon said land. Under judgment in said suit, providing such foreclosure, the land was, on June 4, 1935, sold and conveyed to said N. L. B. Davis, who immediately went into possession of the land. Said Davis "and those of the defendants claiming under him", according to agreed facts, "have had open, peaceable and adverse possession of the land since June 4, 1935, using the same for farming and ranching purposes, having the same under fence and having title or color of title from sovereignty of the soil, with the deed duly recorded, containing a covenant of general warranty and paying all taxes thereon prior to delinquency" and claiming "the entire fee adversely to the world since said date", to the date of filing this suit on December 10, 1941.

On July 24, 1936, N. L. B. Davis by general warranty deed conveyed said quarter section of land to said Will McKeichen, excepting twenty acres undivided mineral interest therein. Subsequently, on June 22, 1938, Will McKeichen and N. L. B. Davis (the latter joining because of said excepted 20 acre mineral interest) executed an oil, gas and other mineral lease upon said land, reserving certain royalties. After that at different times Will McKeichen sold and conveyed mineral and other interests in said land subject to said lease.

In this suit the plaintiffs (Mrs. Dovie L. Talley, et al.) include: (1) three of four heirs of Robert McKeichen, deceased, (the defendant Will McKeichen being the other heir), and (2) all the owners of the one-half oil, gas and other minerals in said land which was conveyed by Robert McKeichen to W. K. Crawley. The defendants (A. M. Howsley, et al.) are the claimants of interests in said land as assigns of Will McKeichen after the latter's purchase from Davis.

The theory of plaintiffs' asserted right of recovery is that Will McKeichen, having as part consideration for the conveyance of the land—minerals excepted—to him, assumed payment of the indebtedness secured by lien on the land (including the minerals therein), and having failed to pay such indebtedness, with the result that said lien was foreclosed and the land sold, upon his reacquisition of the land (less 20 acres undivided interest in the oil, gas and other minerals therein) plaintiffs' mineral interest, otherwise lost by such foreclosure sale, "was", according to the allegations, "immediately reinvested and became in every respect validated by such acquisition, and the said Will McKeichen and Defendants, and each of them, who are now claiming under him are forever estopped from asserting that the mineral interest of the Plaintiffs is not prior and preferable to any claim or interest which they may have in the above described land to the extent of the interest herein alleged in Plaintiffs out of an undivided 140 acres thereof, the said Davis having reserved out of said survey of land 20 acres undivided mineral interest."

The defendants interposed various pleas, the nature of which, if deemed material, will later appear in this opinion.

In a non-jury trial, the court rendered judgment that plaintiffs take nothing. Plaintiffs have appealed.

Appellants' first and second points upon which the appeal is predicated set forth so clearly the theory of liability asserted that we copy same as follows:

"*Point One.* When a person buys land, subject to reservation of the minerals by the grantor, and assumes a mortgage debt

thereon, if the purchaser suffers the land to be foreclosed under the mortgage assumed, thereby causing the grantor to lose the minerals, upon the purchaser's subsequent acquisition of the land and minerals from the mortgagor, *the minerals will eo instante pass by estoppel to his grantor and vendees."* (Italics ours.)

"*Point Two."* (Point two is in sense and substance the same as point one down to the words we have italicised. In lieu of the italicised words in Point one are the following in Point two: "the equitable title to the minerals will immediately pass to the grantor and the legal title to such minerals will be held by him in trust for the grantor under a constructive trust and he will be estopped to question the right of grantor to recover same."

It occurs to us there is a preliminary question whether these two points are, in subject matter, really but one differently stated; or whether, as they purport to do, they present two different questions. The subject matter of Point one—i. e. title by estoppel—was specially pleaded. The subject matter of Point two—i. e. title by operation of a constructive trust—was not pleaded, unless the latter be the same as, or included in, the former. Inasmuch as the doctrine of constructive trusts rests upon the principle of estoppel, we have decided to proceed upon the assumption that both points are properly raised.

■ Some of the difficulties involved in the consideration of this case result from the nature of the ownership of oil, gas and other minerals, in place, under the ground, as evolved by the decisions of the courts of this State. Under said decisions, when Robert McKeichen on July 10, 1925, by general warranty deed conveyed to W. K. Crawley one-half of the oil, gas and other minerals, in the quarter section, the grantee took a fee simple estate therein completely severed from the land constituting the remainder of the quarter section, encumbered, however, by the then existing deed of trust lien. As respecting any question in this case, the effect was precisely the same as if by warranty deed Robert McKeichen had conveyed a particularly described tract (say, 40 acres) out of said quarter section. Thereafter, on October 2, 1926, Robert McKeichen owning said section of land, except one-half of the oil, gas or other minerals therein, by general warranty deed conveyed what he owned, except one-half of the oil, gas and other minerals, to Will McKeichen. To accomplish this, and to avoid including in the conveyance what he had already conveyed to Crawley, it was deemed necessary to except, not one-half of the minerals, but all the minerals, as was done. None of the minerals, therefore, constituted any part of the subject matter of the conveyance to Will McKeichen. Carrying further the analogy already mentioned, the conveyance to Will McKeichen was, as effecting any question to be determined, the same as if the previous deed to Crawley had conveyed a particular 80 acres described as the quarter section, excepting 80 acres, including in the exception the 40 acres previously conveyed to Crawley. The deed to Will McKeichen did not purport to convey, nor was there any intention thereby to convey, any minerals in the quarter section, just as in the supposed case the deed would not purport to convey, nor be intended to convey, the particular 80 acres excepted from the conveyance. When, therefore, the three interests in the quarter section being regarded, as properly they may, as three separate tracts of land were foreclosed as one tract—the same tract existing just prior to the conveyance of the mineral interest to Crawley—the result was that Robert McKeichen ceased to own the one-half of the minerals in the quarter section (or any other interest therein), Crawley, his heirs or assigns, ceased to own the one-half of the minerals formerly owned, and Will McKeichen ceased to own the quarter section, less the minerals therein which he formerly owned. At the foreclosure sale, ownership of all the quarter section, with mineral interests unsegregated from other parts of the land, was conveyed to Davis. Subsequently, when Davis conveyed the land to Will McKeichen, the result was no different from what it would have been had the grantor made three conveyances instead of one, namely, first, a conveyance of one-half of the oil, gas and other minerals which by the foreclosure Davis acquired from the assigns of W. K. Crawley, second, a conveyance of one-half of the oil, gas and other minerals which by such foreclosure he acquired from Robert McKeichen, and third, a conveyance of the remainder of the quarter section, being all of same excepting the oil, gas and other minerals therein, which, by said foreclosure, he acquired from Will McKeichen.

■ Will McKeichen's fee simple ownership of the quarter section, less the 20 acres undivided interest in the minerals therein excepted from the conveyance, was unaffected by any covenants material in the present inquiry. Regarding his former contract of assumption as a covenant, it was not a covenant running with land. "By the weight of authority", says Ruling Case Law, "a provision in a deed, whereby the grantee assumes and agrees to pay an existing mortgage, does not create a covenant which runs with the land, although such provision is inserted in connection with the covenants of seizin and against encumbrances." 19 R.C.L. page 379, § 149. In Corpus Juris Secundum it is said, simply and unqualifiedly, that "a covenant by a grantee to pay an encumbrance does not run with the land." 21 C.J.S., Covenants, page 930, § 69.

■■ We need not cite other authorities upon this proposition, for even if the assumption agreement was a covenant running with land, the fact is of no importance in this case, because in any event such a covenant only runs with the land conveyed to or by the covenantor. The oil, gas and other minerals in the land—one-half owned by Crawley or his assigns and the other half retained in ownership by Robert McKeichen—was not by the deed containing the covenant conveyed either to or by the covenantor, Will McKeichen. Will McKeichen, at the time the covenant was made, was a stranger to the title to that part of the land consisting of oil, gas, and other minerals. "The covenant of a stranger to the title is incapable of transmission by a mere conveyance of the land." 21 C.J.S., Covenants, page 925, § 58.

In support of the above statement, that the covenant must relate to the land conveyed, it is said in Corpus Juris Secundum that "a covenant running with the land ordinarily must relate to the property conveyed." 21 C.J.S., Covenants, page 924, § 56. In further amplification, this authority says: "In order that a covenant may run with the land, it must respect the property conveyed, and the act covenanted to be done or omitted must concern the land or the estate conveyed." Id. It is true the qualifying word "ordinarily" implies a lack of universality in such rule, but we find no discussion showing any reason for the qualification.

■ Another reason why it is immaterial that the covenant may be one running with land results from the general rule "that the duration of a real covenant is coextensive only with the estate to which it is annexed." 14 Am.Jur. page 484, § 5. As to the operation of this rule, the same authority says that "A covenant is therefore extinguished when the estate ceases. * * * Thus, if land is encumbered and is conveyed with a covenant against encumbrances and is afterward purchased subject to the assessment, the effect of such purchase is, for the same reason, to extinguish the benefit of the covenant." Id. In the present case the three estates involved—the two estates undivided in the minerals, as to which Will McKeichen was a stranger, and the estate conveyed to him—all alike were destroyed and ceased to exist as the result of the foreclosure.

The foregoing discussion concerning covenants forecasts the conclusion that if appellants are to be sustained in their contention that they established title to part of the oil, gas and other minerals in the land by estoppel or by operation of a constructive trust, that can be done only because covenants running with the land are unnecessary to the existence of such estoppel or trust.

At the threshold of the next stage of our inquiry is this question: If the facts relied upon show title by estoppel, what kind of estoppel is meant? How does the law classify it and define its field or scope of operation?

■■ The character of estoppel which first comes to mind as most likely involved, if any, is estoppel by deed. We readily conclude there is no estoppel by deed. "Estoppel by deed is a bar which precludes a party from denying the truth of his deed. It may be invoked only in a suit on the deed or concerning a right arising out of it." 31 C.J.S., Estoppel, p. 195, § 10. An estoppel by deed most commonly, perhaps, operates upon a grantor in favor of a grantee. It is difficult to see how estoppel by deed can contrariwise ever operate against a grantee in favor of a grantor except through covenants of the grantee of such nature that they run with the land purportedly conveyed to him. In this case, as said before, there is no such covenant involved, and hence, in our opinion, there is no estoppel by deed.

■■ It is deemed unnecessary, however, to further discuss the question of title by estoppel apart from the question of title through a constructive trust. "Fraud, ac-

tual or constructive, is an essential element in the creation or existence of a constructive trust." 65 C.J. 455, § 215. Texas decisions cited in support of the text are Spangler v. Spangler, Tex.Civ.App., 26 S. W.2d 463; Abilene State Bank v. Donnelly, Tex.Civ.App., 277 S.W. 447; Kuehn v. Kuehn, Tex.Civ.App., 232 S.W. 918, affirmed Tex.Com.App., 242 S.W. 719; Reeves v. Shook, Tex.Civ.App., 225 S.W. 429. "Certain species of the constructive trusts", says Pomeroy, "arise from actual fraud; many others spring from the violation of some positive fiduciary obligation; in all the remaining instances there is, latent perhaps, but none the less real, the necessary element of that unconscientious conduct which equity calls constructive fraud." 3 Pomeroy's Equity Jurisprudence, § 1044. The existence of a constructive trust under the facts of this case may, we think, properly be said to be dependent at all events upon whether the simple failure of Will McKeichen to pay the debt according to his assumption agreement, as a matter of law, constituted fraud. We think the proposition is well established that the mere failure to discharge a promise of something to be done in the future is not fraud. Chicago T. & M. C. R. Co. v. Titterington, 84 Tex. 218, 19 S.W. 472, 31 Am. St.Rep. 39; Rapid Transit R. Co. v. Smith, 98 Tex. 553, 86 S.W. 322; Cearley v. May, 106 Tex. 442, 167 S.W. 725; Edward Thompson Co. v. Sawyers, 111 Tex. 374, 234 S.W. 873.

Even more certainly the simple breach of a promise which constitutes an executory obligation of a valid contract would not of itself constitute fraud. Distributors Investment Company v. Patton, 130 Tex. 449, 110 S.W.2d 47; Wright v. Couch, Tex.Civ.App., 54 S.W.2d 207; Grimsley v. Life Insurance Co. of Virginia, Tex.Civ.App., 154 S.W.2d 196.

The principle which is necessarily at the heart of Appellants' contention is perhaps the most strongly stated in their favor in Faville v. Robinson, 111 Tex. 48, 227 S.W. 938. In that case a mother to whom land had been conveyed by her daughter upon the mother's promise to devise it, at her death, to said daughter, had been repudiated by the mother. The Court said: "Where a grant is made on the faith and because of a promise, a breach of the promise is necessarily a fraud, not to be tolerated in equity although the promise be only verbal. In such cases, where the circumstances are such as to deny the right of a rescission, equity will impose a trust upon the property as a means of defeating a fraudulent and wrongful acquisition of the title. * * * The promise is not to convey any existing interest in real estate. It is made as the means of acquiring the interest. *The interest is obtained on the faith of it* and it enters into the title. Because so, equity will not permit the grantee to hold the title in repudiation of the agreement." (Italics ours.) A comparison of that case with this will serve to manifest the essential differences. The cases are alike in that they involve each a broken promise. However, in the instant case it is to be noted that there is involved no *repudiation* or retention of what was obtained by the promise. The cases are wholly unalike in that in the cited case the trust was charged upon the land *conveyed,* while in this case the effort is to ingraft the trust not upon the land conveyed—that is the quarter section excepting all the oil, gas and other minerals—but upon land—the oil, gas and other minerals—expressly not conveyed. Because of this difference it is, therefore, not true in this case, as in the other, that, as to the promise, "the interest is obtained on the faith of it." In other words, absent any fraud or retention of anything procured by the promise, it is immaterial that other land than that upon which the trust is sought to be ingrafted was conveyed on the faith of a promise subsequently broken.

It seems to us the conclusion is inescapable that if, under the facts of this case, the oil, gas and other minerals as an estate the title to which is in Will McKeichen is charged with a constructive trust in favor of Appellants, then it is immaterial what land anyone, who fails to keep a promise of the nature here involved, may subsequently acquire, it will be likewise charged with such a trust. In our opinion neither reason nor authority sanctions that proposition.

Had we reached a different conclusion with reference to the first two points, then difficult questions would be presented regarding limitation. In view of the conclusion reached, we deem it unnecessary to decide those questions.

Being of the opinion that the judgment of the court below was proper and should be affirmed, it is accordingly so ordered.