Forest D. GATHRIGHT et ux., Appellants,

v.

WESTERN ALLIANCE INSURANCE COMPANY et al., Appellees.

No. 10664.

Court of Civil Appeals of Texas.

Austin.

May 13, 1959.

Rehearing Denied June 3, 1959.

Vandygriff & Presnal, Austin, for appellant.

James R. Meyers, Coleman Gay, Coleman Gay, III, Austin, for appellee.

ARCHER, Chief Justice.

This action was instituted by the appellants against the appellees for breach of

trust and for recovery of a proportionate interest in the ownership of Western Alliance Insurance Company, alternatively for a proportionate share of the profits of Western Alliance Insurance Company, or alternatively for interest for the use of certain trust funds held by appellees· for the use and benefit of appellants by virtue of an agreement dated the 1st day of January, 1950, and the subsequent termination of said agreement in accordance with the termination provisions thereof, such termination agreement being in writing and effective January 1, 1954.

The appeal is predicated on four points as follows:

"First Point: The trial court erred in refusing to sustain plaintiff's appellants herein, motion for summary judgment.

"Second Point: The trial court erred in sustaining defendants' allegation that there were no material issues of fact to be determined.

"Third Point: The trial court erred in finding that defendants had proven certain defenses to the plaintiffs' allegations of breach of trust.

"Fourth Point: The trial court erred in holding that plaintiffs take nothing by their suit."

Appellees have made four counterpoints to the effect that no use of and no misuse of the so-called trust fund was made by appellees; that the assertion of appellees of title to the trust fund would not subject the fund to claims of its general creditors; that appellees were never a trustee of any of appellants' securities or money; and that appellees' treatment of the fund does not entitle appellants to impress a constructive trust on the assets or stock of Western Alliance.

Appellants' original petition, after a recitation of the activities of all parties, the execution of the original contract on January 1, 1950 in which appellants assigned to Lloyds Alliance 70 shares of stock, and one United States Government bond in the sum of $10,000 as a collateral reserve in support of a Special Underwriters Loss Fund, in order that appellants might become Special Underwriters for the limited purpose of underwriting policies to be issued by Lloyds Alliance to any assured of the Gathright Insurance Agency, and the opening of a Special Underwriters Loss Fund at a Bank in Austin to be under the joint control of Mrs. Dale Cook, a daughter of appellants, and the attorney in fact.

By the further terms of the agreement, appellants became exclusively responsible for all losses in connection with any policies issued through the Gathright Insurance Agency by Lloyds Alliance after January 1, 1950.

The agreement provided for payment into the Special Underwriters Loss Fund of 80% of the premiums and a separate 20% of the premiums to be paid to Lloyds Alliance, and not to become a part of the said fund.

Provision was made for the maintenance of the underwriting fund and for a termination of the agreement with an adjustment of the account.

It was alleged that on or about January 1, 1954 appellants had on deposit in the fund a sum in excess of $130,000. The agreement was terminated by a written agreement on or about February 25, 1954, effective January 1, 1954, in which it is provided that all parties to the agreement had fully, faithfully and completely complied with such agreement and that it appeared mutually advantageous to all parties to terminate the agreement, and such was done.

Provision was made for final settlement of any outstanding claims and for the return of shares of stock and the bond, also any cash remaining in the special reserve fund.

Plaintiffs further pled that the defendants did without consent use and commingle the funds paid in as though they were the funds of appellees and that such had been reported as funds of Western Alliance Insurance Company as assets to the Insurance Commission and such constitutes a misuse of said fund.

Appellants sought judgment for that portion of the stock and assets of Western Alliance Insurance Company as it may be determined by an accounting of the trust fund and in the alternative a judgment for that portion of the profits of the company to which they show themselves entitled to upon an accounting, and further in the alternative judgment for interest, etc.

The defendants answered by special exceptions and by general denial.

On July 28, 1957 defendants filed a motion for Summary Judgment alleging that there were no issues of fact to be decided, setting out the claims of appellants and referring to the original contract between the parties, and the termination agreement of the first agreement. Further pleading that the securities were kept in a bank in a safe deposit box which could not be entered unless one of the plaintiffs was present, and alleged the execution of the agreement terminating the first agreement, which stated that all parties "have fully, faithfully and completely complied with both the spirit and the formalities of said agreement."

To the motion for summary judgment was attached the affidavit of John W. Washington, President of Western Alliance Insurance Company.

In the affidavit Mr. Washington sets out, under oath, the dealings between the appellants and appellees and referred to the contracts and to the balance sheet, and that the inclusion of the funds and property in the Special Underwriters Loss Fund did not change the amount of the surplus or guaranty fund since said amount was exactly offset by liabilities.

To this motion plaintiffs filed an answer and counter motion to which were attached the original petition and the contracts, a copy of the transfer of the assets of Lloyds Alliance to Western Alliance Insurance Company, and the affidavits of Forest D. Gathright and James K. Presnall, and pled that there was a question of law and fact existing but that if such was not so, a summary judgment in favor of plaintiffs should be entered.

A hearing was had on the motion of appellees and that of appellants for summary judgment, and after such hearing of the pleadings, the respective motions for summary judgment, the deposition of Forest D. Gathright, the affidavits and the argument of counsel, the court overruled the motion of plaintiffs and held that there was an absence of genuine issue of any material fact and that the defendants were entitled to a judgment as a matter of law and that the summary judgment should be rendered on behalf of the defendants and such motion was granted.

We do not believe that appellees made any use or misused the special fund into which 80% of the premiums were deposited or the shares of stock or the bond, other than to use with the consent and direction of appellants in the application of such funds in the payment of claims arising out of losses on policies written by appellants.

The original contract provided for the joint use of money in the special account in the payment of losses.

 Appellants claim that even though appellees did not make any physical use of the funds, that there was a misuse of the fund because appellees claimed to own it in spite of the restrictions by holding the said trust fund in their own name and including the funds as assets in reports to the Texas Insurance Commission and in financial statements distributed to the public.

The contract provides in one section that

" * * * contemporaneous with the execution of this agreement the special underwriters, Forest D. Gathright and Anirae O. Gathright, will cause to be opened a special deposit fund to be known as the 'Special Underwriters Loss Fund,' at the Fidelity State Bank of Austin, Texas, which fund is to be under the joint control of Mrs. Dale Cook, and the attorney in fact and his successors at Lloyds Alliance."

Further provision was that:

"Forest D. Gathright and Anirae O. Gathright, jointly and severally have contemporaneous with the execution of this agreement paid into the Guaranty Fund of Lloyds Alliance the sum of $10,000 represented by one United States Government bond bearing No. * * * and have * * * sold, as signed and transferred over and unto the said Lloyds Alliance 70 shares of American Telephone & Telegraph common stock * * *"

John W. Washington, attorney in fact for Lloyds Alliance and later President of Western Alliance Insurance Company, in the affidavit accompanying the motion for Summary Judgment, stated that the bank account was carried: "City National Bank, Gathright"; the bonds as: "Government Bonds, Gathright"; the stock as: "American Telephone & Telegraph Co. stock-Gathright."

One examining the books and records of appellees would have discovered, that appellants had an interest in the property.

The affidavit of Washington further outlines the requirements of the law to maintain certain reserve, and the contract in connection with all insurance written, including the policies written by the Special Underwriters.

That the assertion of ownership by the Insurance Company of title to the designated Trust Fund would not make it so, and would not subject it to claims of the company's general creditors.

We do not believe that appellees were trustees of the securities of appellants in the general application of the term "Trustee".

According to the contract the appellants paid into the Guaranty Fund of Lloyds a bond for $10,000 and sold 70 shares of stock worth $10,000 to represent the collateral reserve in support of the Underwriters Loss Fund described in the contract; appellants opened a special deposit fund known as a Special Loss Fund in a bank, under the joint control of Mrs. Dale Cook and the attorney in fact. There was to be paid into the Loss Fund 80% of the premiums on policies written by appellants, and there was a provision that in event sufficient money was not kept in the Loss Fund to pay all losses, the attorney in fact was authorized to liquidate both or either the bond or the stock. The securities were kept in a safe deposit box and the signature was required of one of appellants or their daughter, Mrs. Cook, to withdraw any money from the special account.

There was never a separation of the legal from the equitable title to the property which would be essential to create a trust relationship. Wheeler v. Haralson, 128 Tex. 429, 99 S.W.2d 885.

The appellees' treatment of the fund does not entitle appellants to impress a constructive trust on the assets or stock of Western Alliance.

A constructive trust is imposed on property of a fiduciary which he acquired through exploitation of his fiduciary duty under such circumstances as require such relief to prevent his own unjust enrichment. See Binford v. Snyder, 1945, 144 Tex. 134, 189 S.W.2d 471; Hendrix v. Nunn, 1876, 46 Tex. 141.

The fund was handled in conformity with the terms of the written agreements, and appellees had no opportunity to make use

of the fund and there is no suggestion of fraud, which must exist in order to justify a restitution such as is sought by appellants. Talley v. Howsley, Tex.Civ.App., 170 S.W.2d 240, affirmed 142 Tex. 81, 176 S.W.2d 158.

Since appellees could not do anything with the fund without appellants' consent, and the true ownership of the fund was reflected on the books of appellees, and at all times appellants' interest in the fund was fully protected and handled in accordance with the agreement of the parties, the Court did not err in granting the summary judgment in favor of appellees, there being no genuine issue of any material fact.

The judgment of the Trial Court is affirmed.

Affirmed.