459 F.2d 268
 John W. GURLEY et al., Plaintiffs-Appellees-Cross Appellants,
v.
Herbert P. LINDSLEY et al., Defendants-Appellants-Cross Appellees.
John W. GURLEY et al., Third Party Plaintiffs-Appellants,
v.
CITIES SERVICE OIL COMPANY, Third Party Defendant-Appellee.
 No. 71-1683.
 United States Court of Appeals,
Fifth Circuit.
 April 21, 1972.
Rehearing Denied June 2, 1972.
 
 Emmet A. Blaes, Wichita, Kan., Cecil Kuhne, Lubbock, Tex., Jochems, Sargent & Blaes, Wichita, Kan., William R. Moss, Crenshaw, Dupree & Milam, Lubbock, Tex., for defendants-appellants-cross appellees.
 John E. Vickers, Ralph Brock, Brock, Waters & Galey, Lubbock, Tex., for plaintiffs-appellees.
 Cecil C. Cammack, George K. Gilbert, Tulsa, Okl., for Cities Service.
 Before BELL, AINSWORTH and GODBOLD, Circuit Judges.
 GODBOLD, Circuit Judge:
 
 
 1
 Plaintiffs in this case claimed an interest in two tracts of Texas land, called Mound Lake and Rich Lake, and a share of past royalties from oil production under a lease covering Mound Lake. In a nonjury trial the District Court found for the plaintiffs. We affirm on what appear to be the major issues and remand for necessary additional proceedings.
 
 
 2
 The litigation springs from a consent judgment entered in 1948 between the respective predecessors in interest of the plaintiffs and of the defendants. In that year A. L. Gurley was plaintiff and H. K. Lindsley defendant in a suit in the United States District Court for the Northern District of Texas. Gurley asserted rights against Lindsley's title to Mound Lake (fee simple title to an undivided two-thirds interest) and Rich Lake (absolute fee simple title). Lindsley asserted a debt owed to him by Gurley in the amount of $35,000. The controversy was settled by a consent judgment the pertinent parts of which are set out in the margin.[1] The key portions may be summarized as follows. Gurley agreed that Lindsley was the fee simple owner of an undivided two-thirds interest in Mound Lake and an absolute fee simple in Rich Lake. Lindsley agreed that Gurley was not obligated to pay the $35,000 debt in any manner except out of future income, sales or royalties accruing from the two tracts. Half of the income and profits from sales of the tracts[2] would be credited against the debt, and taxes and other expenses added to the debt in like proportions. Lindsley was given the power to sell and to make mineral and pasturage leases. Interest was to be added to the unpaid balance of the debt at 5% per annum.[3] If and when the debt, plus interest and appropriate charges, was liquidated by Gurley's share of the proceeds deriving from the two tracts, Gurley was thereafter to receive half of the income directly and pay to Lindsley his proportionate share of taxes and expenses. Up to that time Lindsley was to keep all income and pay all expenses. Lindsley agreed to provide semiannual statements of account, listing the income, outlays, and the status of the total debt.
 
 
 3
 The judgment also provided that it bound transferees of Lindsley who received a mineral interest, unless that interest was in fee simple. In addition, the judgment contained a boilerplate provision that its obligations were binding upon heirs, executors, administrators, devisees, legatees and assigns of the parties.
 
 
 4
 Commencing shortly after the entry of judgment, Lindsley began sending to Gurley the periodic accountings as required. In 1951 Lindsley died. His estate was administered in Kansas, and one of his sons, Herbert P. Lindsley, assumed management of the land. The forwarding of statements of account to Gurley, however, never commenced again. Gurley then died in 1952. Around three years after his father's death Herbert P. Lindsley found among his father's papers copies of the semiannual statements of accounts which his father had been sending to Gurley. In 1954 correspondence was exchanged between Gurley's wife and her lawyers and Herbert P. Lindsley and his lawyers. The Gurleys urged the Lindsleys not to sell the land since its potential for oil production was favorable. The Lindsleys retained possession and did not sell.
 
 
 5
 In 1959 an oil and gas lease was executed by Herbert P. Lindsley and his brother Robert on the Mound Lake property. The Gurleys learned of the lease and entered into a written agreement, which was filed of record, authorizing the lessee to pay royalties to the Lindsleys until such time as the lessee was notified by the Gurleys that the debt had been paid, after which royalties were to be payable directly to the Gurleys. The Gurleys did not notify the Lindsleys of this agreement, and they never gave notice to the lessee to pay royalties directly to them. Drilling commenced in 1962, and paying production began shortly thereafter. The District Court found that plaintiffs were aware that oil was being produced but that in the absence of any statements of accounts from the Lindsleys, plaintiffs believed the income had not been sufficient to discharge the debt and the interest, and the District Court also found that plaintiffs' demand for a statement on May 6, 1969, came within a reasonable time after they knew or had reason to believe that the income was sufficient. The statement was received in August 1969. In it interest at 5% per annum was compounded semiannually on the Gurley debt. Half of total taxes and expenses were added to the debt each year, plus a $750 semiannual fiduciary fee for Herbert P. Lindsley's services. Applied against these charges and the debt was one-half of the Lindsleys' income. Under this calculation and debt and expenses were discharged as of July 1, 1968. Apparently no agreement could be reached on this accounting, and in December 1969 the successors in interest of Gurley filed this suit in the Northern District of Texas. In their complaint the plaintiffs acknowledged the substantial correctness of the figures for income, taxes, and expenses shown in the 1969 statement. They opposed the semiannual compounding of interest and the charging of a fiduciary's fee, and plaintiffs, on the basis that the defendants were derelict fiduciaries,[4] claimed interest at 10% per annum.
 
 
 6
 After his death, the estate of H. K. Lindsley vested in his sons, Herbert P. Lindsley and Robert K. Lindsley. Robert K. Lindsley has since died, with his estate going to his wife, Jeanne C. Lindsley, who was appointed his executrix in both California and Kansas. Subsequently she died, and the estates of Robert K. and Jeanne C. have gone, or will go, to their sons, Robert Clarke Lindsley and Herbert K. Lindsley II. Robert Clarke Lindsley is executor of the estate of his mother, by appointment in both California and Kansas, and administrator de bonis non of the estate of his father, also by appointments in California and Kansas. The defendants, all served with process under the Texas long-arm statute,[5] were Herbert P. Lindsley, individually and as executor of Herbert K. Lindsley; Herbert K. Lindsley II, individually; and Robert Clarke Lindsley, individually and as executor of the estate of his mother (Jeanne C.) and administrator of the estate of his father (Robert K.). Shortly before suit was filed Cities Service Oil Company, the lease operator, received notice of the Gurleys' claim, stopped paying royalties, and began accruing them on its books. It was joined in the case as a third party defendant-stakeholder.
 
 
 7
 *****
 
 
 8
 * * *
 
 
 9
 The District Court found in favor of plaintiffs and rendered a joint judgment against Herbert K. Lindsley, individually, and Robert Clarke Lindsley, as administrator of the estate of Robert K. Lindsley and as executor of the estate of Jeanne C. Lindsley.[6] The court held that in receiving the income from the property those defendants held liable and their predecessors in interest "became fiduciaries with the duty and obligation to account to and to . . . pay any amounts due and owing to the Plaintiffs by virtue of the judgment," and that on proper application of the funds the Gurley debt was discharged in 1966. The court awarded to the plaintiffs the Gurley portion of past royalties in excess of the debt and interest, and vested in them title to oil, gas and mineral rights in the proportions provided by the judgment. The Lindsleys have appealed. They renew objections timely made below that Robert Clarke Lindsley, as executor and administrator, was not subject to suit in Texas; that the court lacked personal jurisdiction over any of the defendants;[7] and that the Gurleys' claim is time-barred and violates the rule against perpetuities. They also contend that the 1948 judgment created only a contractual obligation personal to H K. Lindsley, which terminated with his death, could be enforced only by filing of claims against his estate (which were not filed), and does not bind his successors in interest. The Gurleys have cross appealed on the ground that the District Court erred in holding that the 1948 judgment provided for compound instead of simple interest on the undischarged debt balance and in denying 10% interest against the fiduciaries.1. The obligations created by the judgment.
 
 
 10
 We affirm the District Court's conclusion that "[i]n receiving the income from the property in question the Defendants, and their predecessors in interest, became fiduciaries with the duty and obligation to account to and promptly pay any amounts due and owing to the Plaintiffs by virtue of the [1948] judgment." In addition, we hold that although the 1948 judgment states that H. K. Lindsley was to be the "absolute owner in fee simple," the land and the income were impressed with a trust in favor of Gurley and his successors, so that Lindsley held a fee in the land and Gurley and his successors a beneficial interest.
 
 
 11
 Our conclusion could be based solely on the accounting submitted in 1969 by Herbert P. Lindsley through counsel for all defendants. Counsel's accompanying letter refers to it as "Mr. Lindsley's accounting" and discusses the basis on which compensation for "fiduciary services" should be fixed "for the period of service by Herbert P. Lindsley as successor to his father." It refers to the inappropriateness of executing division orders "until the parties are satisfied as to the disosition [sic] of the matter" and concludes with the statement, "We will expect to expedite a conclusion of this matter as soon as we hear from you." In no wise does the accounting or the letter disaffirm a fiduciary relationship. Rather, the entire tenor is one that recognizes the existence of such a relationship.[8] But because the defendants insist that the accounting and the letter comprised a settlement offer and not an acknowledgement of any responsibility of the Lindsleys to the Gurleys, we consider the language of the judgment and its purpose.
 
 
 12
 Ordinary principles of construction apply to judgments. See Spool Stockyards Co. v. Chicago, R.I. & Pac. RR Co., 353 F.2d 263, 266 (5th Cir. 1965); Maisel v. Maisel, 312 S.W.2d 679, 682 (Tex.Civ.App.1958).[9] They are to be reasonably interpreted, with effect given to all parts of the writing.
 
 
 13
 The arrangement established by the judgment was straightforward. Gurley gave up his preexisting claims to the present enjoyment of the lands and vested title in Lindsley, with power in Lindsley to pass title to others and to manage and lease the land, all without having to secure Gurley's consent. Gurley's personal obligation to pay the debt was washed out, but Gurley could not receive income from the land unless and until it discharged the debt. Aside from being required to give Gurley semiannual statements, Lindsley was granted complete responsibility over the land. This entire arrangement is a classic example of a trust.
 
 
 14
 The theory of defendants that the judgment imposed upon Lindsley only a personal contractual obligation which terminated upon his death and never became binding upon his heirs, executors and assigns is inconsistent with portions of the agreement itself, with the common sense of what the parties were doing, and with the interpretation placed by the Lindsleys themselves on their own obligations. To be viable the arrangement required continuity and the opportunity for substantial duration. For the structured arrangement to terminate upon the contingency of Lindsley's death would have been fundamentally inconsistent. The judgment says that it is binding on the heirs, executors (etc.) of both parties. As to the assignee of a mineral interest (the most likely assignee), the judgment provides specifically that it binds an assignee except one acquiring fee simple title from Lindsley. The requirement that if mineral income discharged the debt Lindsley would execute division orders implies recognition of Gurley's having rights in the property. If a portion of the lands were sold at a loss, the loss was to be "charged against the remaining lands to each party and to the other owners in proportion to their respective interest." The phrase "each party and . . . the other owners" implies that each party, including Gurley, was an "owner," and the connotation is sustained by the language "charged against the remaining lands . . . in proportion to [each party's] respective interest." The judgment provided that ". . . Gurley is not obligated to pay the indebtedness . . . except out of the profits if any, arising from the sale of said lands and out of future rentals or income. . . ." The concept of "payment" by Gurley out of proceeds of the land, implies that he has an interest therein.
 
 
 15
 References in the judgment to "personal" obligations of Lindsley will not bear the great weight which defendants place upon them. The first reference is that Lindsley is "personally bound" to account to Gurley for Gurley's portion of the sale of a fee simple interest, and the second is that Lindsley is "personally obligated" after liquidation of the debt to see that Gurley receives his share of income from the lands (on which Gurley will have no lien). In both instances, the phrase appears to us to identify Lindsley as the person looked to for discharge of an obligation and to exclude another source (in the first instance the transferee of the fee, and in the second a lien on the land), rather than to limit Lindsley's capacity as otherwise established.
 
 
 16
 The separation of legal title from the beneficial interest is the essential element of a trust. See Wheeler v. Haralson, 128 Tex. 429, 99 S.W.2d 885, 886 (Tex.Com.App.1937); Gathright v. Western Alliance Ins. Co., 324 S.W.2d 894, 897 (Tex.Civ.App.1959); Long v. Long, 252 S.W.2d 235, 247 (Tex.Civ.App. 1952); Knight v. Tannehill Bros., 140 S.W.2d 552, 559 (Tex.Civ.App.1940).[10] Often the separation of title is not shown by language as compelling as was used here. The normal requisites of a trust are that the beneficiary must be capable of identification, the property subject to the trust must be specifically described, and the duties of the trustee must be defined clearly enough that a court of equity will be able to enforce them. See, e. g., Rippstein v. Unthank, 380 S.W.2d 155, 157-158 (Tex.Civ.App.), rev'd on other grounds, 386 S.W.2d 134 (Tex.Sup.Ct.1964); Rich v. Witherspoon, 208 S.W.2d 674, 675-676 (Tex.Civ.App. 1948). The 1948 judgment satisfied all three conditions. It establishes that Lindsley and his successors are entitled to all proceeds subject to occurrence of a condition which will cause Gurley and his successors to become entitled to a portion. It specifically describes the two tracts. Lindsley's duties are well defined. The absence of words like "trust" and "trustee" is not determinative. If the requisites of a trust are present, the instrument will be given effect as such without regard to the form of words. Compare Costello v. Hillcrest State Bank of University Park, 380 S.W.2d 780, 782 (Tex.Civ.App.1964), and Clark v. Wisdom, 403 S.W.2d 877, 883 (Tex.Civ.App. 1964), with Knight v. Tannehill Bros., 140 S.W.2d 552, 559 (Tex.Civ.App.1940).
 
 
 17
 The Lindsleys who are successors to Herbert K. Lindsley are not free of trust obligations by reason of not having agreed to perform the duties of fiduciaries. They took the property subject to the trust. Only a party who purchases trust property for value and without notice of the trust has a claim to the property superior to that of the beneficiaries. See, e. g., Eaton v. Husted, 141 Tex. 349, 172 S.W.2d 493, 499-500 (1943); IV Scott on Trusts Sec. 284 (3d Ed. 1967).
 
 
 18
 2. Jurisdiction of the persons of the defendants; right to
 
 
 19
 sue foreign representatives in Texas.
 
 
 20
 In part 1 we concluded that the 1948 judgment impressed a trust on the Texas land and affirmed the finding of the District Court that the defendants are fiduciaries. A court of equity may impress a trust on land located in the forum state with service by publication on the nonresident trustee, at least to the extent of determining the title to and interests in the land. Porter Land & Water Co. v. Baskin, 43 F. 323 (C.C.S.D. Cal.1890); Chicago & A. Bridge Co. v. Anglo-American Parking & Provision Co., 46 F. 584 (C.C.W.D.Mo.1891); Midstate Amusement Corp. v. Rivers, 54 F. Supp. 738 (E.D.Wash.1944); Goodwin v. Colwell, 213 Pa. 614, 63 A. 363 (1906); Robert v. Frogge, 149 Tenn. 181, 258 S.W. 782 (1923).
 
 
 21
 Without regard to the technical distinctions that Texas may make between actions in rem, quasi in rem, and in personam, that state's interest in the administration and supervision of a Texas trust composed of Texas assets "establish[es] beyond doubt the right of its courts to determine the interests of all claimants, resident or nonresident, provided its procedure affords full opportunity to appear and be heard." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865, 872 (1949). The defendants cast in judgment were given that opportunity by service upon them under the Texas long-arm statute, Article 2031b, V.A.T.S.[11]
 
 
 22
 Thus, to the extent that the District Court judgment operates against the trust assets, the jurisdiction of the court is not subject to serious question. However, the judgment is in personam in form insofar as it imposes liability on Herbert P. Lindsley, individually, and Robert Clarke Lindsley, as administrator and executor, for damages in the liquidated amount of $61,243.62. As to royalties, impounded and future, it directs they be paid to the plaintiffs and the two defendants according to their specified fractional interests, and it vests title to the oil, gas and mineral rights in the lands in plaintiffs and defendants in specified fractions. The judgment does not purport to condemn to satisfaction of defendants' personal liabilities the oil and gas royalties (accrued and future) payable to them, or their vested interests in the land. However, after suit was filed, plaintiffs applied for an attachment of the Texas lands, and defendants then entered into a stipulation that plaintiffs need not proceed further with the attachment and defendants would not transfer or encumber the property. After judgment the defendants moved that they not be required to post a supersedeas bond because the judgment, if affirmed, "is completely secured by the real estate itself and by the impounded runs [i. e., royalties]." Thus, by agreement, the judgment may be satisfied out of the land and the accrued royalties in the same manner as the court could have, by decree, acted in the first instance directly against those assets pursuant to its own powers. Whether these sources will be sufficient to satisfy the judgment we do not know. If they are not sufficient, a question arises as to the power of the court to impose on the defendants by judgment additional personal liability. This requires two inquiries: whether state law provides for the exercise of jurisdiction under the circumstances of the case and whether the exercise of jurisdiction pursuant to state law violates the Constitution. Atwood Hatcheries v. Heisdorf & Nelson Farms, 357 F.2d 847 (5th Cir. 1966). As to judgment for additional personal liability, we hold that Herbert P. Lindsley has been validly subjected to judgment, and we pretermit decision of that issue as to Robert Clarke Lindsley, as executor and administrator.
 
 
 23
 Article 2031b is a "doing business" statute. Section 4 defines "doing business" to include "entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State." However, the predecessor language, "without including other acts that may constitute doing business," has been construed as a catchall intended to expand the jurisdictional scope of the statute to constitutional limits without the necessity of including other acts by specific description,[12] a construction supported by the authorities set out in the next paragraph.
 
 
 24
 The statute reaches as far as fourteenth amendment due process will permit. Coulter v. Sears, Roebuck & Co., 426 F.2d 1315, 1316 (5th Cir. 1970); Eyerly Aircraft Co. v. Killian, 414 F.2d 591, 598-599 (5th Cir. 1969); Atwood Hatcheries v. Heisdorf & Nelson Farms, 357 F.2d 847, 852 (5th Cir. 1966); Jetco Electronic Industries, Inc. v. Gardiner, 325 F.Supp. 80, 83 (S.D.Tex.1971); Mitsubishi Shoji Kaisha Ltd. v. M/S Galini, 323 F.Supp. 79, 81 (S.D.Tex. 1970); Hearne v. Dow Badische Chemical Co., 224 F.Supp. 90 (S.D.Tex.1963); Able Finance Co. v. Whitaker, 388 S.W. 2d 437 (Tex.Civ.App.1965); cf. also Trinity Steel Co. v. Modern Gas Sales & Service Co., Inc., 392 S.W.2d 861 (Tex. Civ.App.1965).
 
 
 25
 The 1948 judgment, entered by consent, is a bilateral undertaking performable, and performed, in part in Texas. The royalties from the Texas land operated to extinguish the Gurley debt. Some, though not all, of the successors in interest to A. L. Gurley are Texas residents whose impediments to receiving earnings from the land were removed by the extinguishment of the debt. They then became entitled to shares of the royalties payable directly to them upon execution of division orders, and they became obligated to pay to the Lindsleys proportionate shares of taxes and other expenses.[13] However, reliance need not be placed solely on the contract as a basis for long-arm jurisdiction. The acts done by Herbert P. Lindsley pursuant to the judgment are such as to constitute doing business under the "other acts" part of the definition, recognizing that "other acts" extends to due process limits. He enjoyed the benefits of Texas land ownership, received royalties from the land, managed it, received pasture rentals, paid the taxes, negotiated and executed pasture leases and the oil lease, and on demand submitted to the Gurleys, some of whom were in Texas, the 1969 accounting. Herbert joined in the sale of a 60-acre mineral interest. In 1954 he corresponded with the Gurleys concerning proposed disposition of the land. Thus, as to the first inquiry we conclude that the exercise of jurisdiction provided by the Texas statute reaches Herbert P. Lindsley.
 
 
 26
 Turning to due process, this circuit has interpreted International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), to require that a nonresident must have purposefully availed himself of the benefits of conducting activities in the forum before he shall be amenable to the process of its courts in suits related to those activities. See, e. g., Dawkins v. White Products Corp., 443 F.2d 589 (5th Cir. 1971); Coulter v. Sears, Roebuck & Co., supra; Atwood Hatcheries v. Heisdorf & Nelson Farms, supra. Generally, the fulfillment of these requirements will satisfy the concept of fair play invoked in International Shoe.[14] The deliberate enjoyment by Herbert P. Lindsley of the Texas land, plus his other actions which we have described, are sufficient contacts to meet the requirements of due process.
 
 
 27
 As to Robert Clarke Lindsley, as executor and administrator, we pretermit decision of whether he can be subjected to a personal judgment for any liability greater than can be satisfied out of the lands and the impounded royalties. Apparently all that he ever did with respect to the Texas lands was to receive royalty payments and pay a share of taxes.[15] Whether he falls within Article 2031b and, if so, whether due process standards are met as to him are questions inadequately presented to us for review. Also, according to plaintiffs at oral argument, the issue probably is of only hypothetical interest. If it is an issue of importance rather than an abstraction, the parties may present it, with adequate briefs, by petition for rehearing.
 
 
 28
 A separate question, to which the District Court did not address itself, is whether, assuming that there is jurisdiction over Robert Clarke Lindsley, as representative of the two estates on which no ancillary administration is pending in Texas, that state would exercise its jurisdiction by allowing suit against him to any extent. The capacity to be sued of one acting in a representative capacity is to be determined by the law of the forum state. Fed.R.Civ.P. 17(b). As to actions at law, Texas recognizes the general rule that the foreign executor or administrator is only suable in the state of his appointment.[16]
 
 
 29
 For several reasons, we entertain no doubt that the courts of Texas would hold Robert Clarke Lindsley, in his representative capacity, suable in Texas under the circumstances of this case. The gravamen of the case is equitable in nature-to require an accounting by trustees for the corpus of a trust of Texas lands and the income therefrom, and to vest the title to Texas land, all pursuant to provisions of a Texas consent judgment. Many jurisdictions recognize a right to proceed in equity against the foreign executor or administrator for an accounting with respect to assets within the forum. Cases are collected at 53 A.L.R.2d 331-340, an annotation noted in 18 Tex.Jur.2d, Decedents' Estates Sec. 315, at 276 n. 6 (1962). Most frequently such suits concern moveable personal property brought into the forum by the representative. But the interest of the forum state in allowing suit is especially strong where the asset is local land, the title to and possession of which is of particular interest to the forum. Clopton v. Booker, 27 Ark. 482 (1872). In some instances the rationale has been the presence of the relationship found by the District Court to exist in this case, that is, that the action really is against the defendant in his capacity as a trustee rather than as executor or administrator. Groome v. Leatherwood, 240 N.C. 573, 83 S.E.2d 536 (1954).[17] Also the stake of impounded royalties, in which the foreign representative has an interest, is before the court for disposition.[18]
 
 
 30
 Applying these principles, it is our view that Texas would exercise its jurisdiction over Robert Clarke Lindsley, as representative of the estate, and the federal court, therefore, will do so.[19] Certainly, effective judicial administration commands that result.
 
 
 31
 3. The statutes of limitation and laches.
 
 
 32
 To avail himself of laches or of a statute of limitations a trustee must show both a repudiation and that the beneficiary had notice of the repudiation. III Scott on Trusts Sec. 219.1 (3d ed. 1967). The rule is essentially the same as for adverse possession of land. See Spangler v. Spangler, 26 S.W.2d 463, 469 (Tex.Civ.App.1930), mod. on other grds., 41 S.W.2d 60 (Tex.Comm. App.1931); Montgomery v. Trueheart, 146 S.W. 284, 287-288 (Tex.Civ.App. 1912). Since the trustee holds land for the beneficiary, his mere possession is not a repudiation. Covey v. Knight, 215 S.W.2d 684, 688-689 (Tex.Civ.App.1948). In Smith v. Dean, 240 S.W.2d 789, 790 (Tex.Civ.App.1951), a client gave her attorney control of property and then left. The attorney managed the land and paid taxes for seven years, meanwhile losing track of the client's residence. During the period the client made no attempt to contact the attorney or show a continued interest in the land. Nevertheless, the court held that limitations would not bar a claim by the client and her assigns as beneficiaries under a trust. III Scott, supra, Sec. 219.1 notes that mere failure of a trustee to perform and of the beneficiary to compel performance do not constitute a repudiation. A beneficiary who, like the Gurleys, will not receive the fruits of the trust until a future time is held to more relaxed standards in pressing a claim. III Scott on Trusts Sec. 219.4 (3d ed. 1967).
 
 
 33
 The only evidence arguably supporting a repudiation is the failure to furnish statements of account, and that is insufficient. In addition, the 1954 correspondence indicates acquiescence in the obligations of the 1948 judgment rather than repudiation, and, as we have already discussed, the thrust of the 1969 accounting is affirmance rather than disaffirmance.
 
 
 34
 Even if the statutes of limitations applied, they would not bar plaintiffs' claim. Article 3773, V.A.T.S., provides that a judgment becomes dormant if no execution is issued within 10 years after rendition, and no execution shall issue unless the judgment is revived. Under Article 5532, V.A.T.S., if execution has not issued within 12 months after rendition, a judgment may be revived within ten years after the date of the judgment and not thereafter. The Gurleys have never revived the 1948 judgment, but the Texas cases have carved out an exception to Article 3773 dormancy for judgments imposing continuing obligations other than the mere payment of money. See Prince v. Frost-Johnson Lumber Co., 250 S.W. 785 (Tex. Civ.App.1923); Henderson v. Chesley, 229 S.W. 573 (Tex.Civ.App.1921); see also 34 Tex.Jur.2d, Judgments Sec. 615 (1962). As in Henderson and Prince, the 1948 judgment in this case settled the title to land and interests therein, subject to obligations imposed on the title holder. Gurley was not entitled to a monetary award. Maxwell v. Maxwell, 204 S.W.2d 32 (Tex.Civ.App.1947) found subject to the execution requirement of Article 3773 a divorce decree providing for $200 payable upon entry of judgment, followed by a monthly stipend of $70. The judgment imposed a continuing obligation to provide support, but the required performance was only the payment of money.
 
 
 35
 4. The rule against perpetuities.
 
 
 36
 The rule against perpetuities was not violated in this case. The rule applies to beneficial interests under a trust. Kelly v. Womack, 153 Tex. 371, 268 S.W.2d 903 (1954). It relates to the vesting of estates or interests, not to their duration. Id. at 905; Singer v. Singer, 150 Tex. 115, 237 S.W.2d 600, 605 (1951); Schmidt v. Schmidt, 261 S.W.2d 892, 897 (Tex.Civ.App.1953). Determination of whether the rule is violated is made by reference to the language of the creating instrument, in this case the 1948 judgment, and with reference to the circumstances existent at the time that instrument became operative. Schmidt v. Schmidt, supra, 261 S.W.2d at 897. Gurley's equitable interest became vested at once. Kelly v. Womack, supra; Hunt v. Carroll, 157 S.W.2d 429 (Tex.Civ.App.1941); Anderson v. Menefee, 174 S.W. 904 (Tex.Civ.App.1915). The fact that full possession or enjoyment is postponed is immaterial if the beneficial interest has vested, since the rule is concerned with vesting and not with receipt of profits. Kelly v. Womack, supra; Anderson v. Menefee, supra. The facts that for an undetermined length of time Gurley's enjoyment of the land consisted of application of his pro rata share of proceeds to the $35,000 debt, and that the equitable interest would ripen into a legal interest after the debt was discharged and he would then come into a different form of enjoyment by directly receiving income, do not alter the fact that his interest vested forthwith upon entry of the 1948 judgment.
 
 
 37
 5. The cross appeal.
 
 
 38
 The plaintiffs are correct, as asserted on their cross-appeal, that the court should have awarded interest at 10% per annum, the highest legal rate allowable in Texas.[20] In Langford v. Shamburger, 392 F.2d 939 (5th Cir. 1968), this court, with two Texas judges on the panel, reviewed the Texas cases and held that, although it was inclined to limit interest in the case before it to 6%, it was not authorized to do so, that the Texas law did not confine the use of the high rate to cases of serious defalcation and allow a lower rate in other circumstances.
 
 
 39
 We reject the claim of plaintiffs that interest on the Gurley debt should have been simple interest rather than compound. The court was not incorrect in following the construction placed on the agreement by H. K. Lindsley in the semiannual statements he rendered during his lifetime, there being no evidence that Gurley ever objected to it or considered it incorrect.
 
 
 40
 On the appeal, the District Court is affirmed. On the cross-appeal, the District Court is affirmed in part and reversed in part, and the case is remanded for further proceedings not inconsistent with this opinion. Costs are taxed against appellants-cross appellees.
 
 
 
 [1]
 "The Court finds and it is adjudged and decreed:
 "That the American Warehouse Company has assigned all of its claims against Plaintiff, A. L. Gurley, to the defendant, H. K. Lindsley, and said Lindsley has assumed all the obligations of the defendant. The American Warehouse Company, to the plaintiff, and said Warehouse Company, to the plaintiff, and said Warehouse Company has conveyed to said Lindsley all of its interest in the lands hereinafter described and that defendant, H. K. Lindsley, is the absolute owner in fee simple of an undivided two-thirds interest in the Mound Lake lands hereinafter described, the remaining one-third belonging to persons not parties to this case.
 [Description of Mound Lake land.]
 "That the defendant H. K. Lindsley is absolute owner in fee simple of the following described lands which are referred to in defendants' answer as the Rich Lake lands and are located in the County of Terry in the State of Texas and more particularly described as follows, to-wit:
 [Description of Rich Lake land.]
 "That the amount in which plaintiff is indebted to the defendants is the sum of Thirty-five thousand dollars, ($35,000.00)
 "That the defendant the American Warehouse Company has assigned its interest in said indebtedness to defendant H. K. Lindsley and has no further interest therein and has no interest in said lands.
 "That the said H. K. Lindsley has the right to sell and convey said lands or any part thereo for to lease the same or any part thereof or to lease the same for mining of oil, gas or other minerals without obtaining the consent of the plaintiff A. L. Gurley.
 "That upon the sale of said lands the said H. K. Lindsley shall pay over to the said A. L. Gurley any amount received from the sale of a 1/3 interest in the Mound Lake lands or a 1/2 interest in the Rich Lake lands over and above the balance remaining unpaid of said sum of thirty-five thousand dollars, ($35,000.00) with interest added thereto at the rate of 5% per annum from the date hereof, after crediting the said Gurley with all rents and profits from and after the date hereof and charging him with all taxes and other expenses as hereinafter more fully stated. In the case of the Mound Lake land the said Gurley is to be charged with one-third of the taxes and other expenses hereafter accruing and with one-third of the 1948 taxes and credited with one-third of all rents and profits hereafter accruing but, including one-third of $150.00 received for pasture rent since this action was brought.
 "In the case of the Rich Lake lands Gurley is to be credited with one-half of the rents and profits hereafter accruing and charged with one-half of the taxes and other expenses hereafter accruing and with one-half of the taxes for the year 1948.
 "The said Gurley is not obligated to pay the said indebtedness of $35,000.00 in any way except out of the profits if any, arising from the sale of said lands and out of future rentals or income, including royalties, accruing to the owner of said lands in the proportions for the Rich Lake lands and Mound Lake lands above stated.
 "The said H. K. Lindsley shall have the right to make and execute deeds, conveying his aforesaid interests in said lands to any person he sees fit and to execute oil, gas and other mineral leases without the consent of said Gurley but the said Lindsley shall account to said Gurley for Gurley's aforesaid proportionate portion of any income of any kind from said lands. The said Lindsley shall furnish to said Gurley on the first days of January and July of each year a statement of account showing all receipts and disbursements by him on account of said lands and showing the status of the account including the said charge of interest as aforesaid. Said account is to be furnished by said Lindsley to said Gurley within thirty days after the first days of January and July of each year and shall show the status of the account to said dates.
 "In the case of a sale of the fee simple title of the undivided two thirds interest of said Lindsley in said Mound Lake lands or of the whole of the Rich Lake lands or of any tract out of either the Mound Lake or Rich Lake lands, without the reservation to the seller of any mineral interest, the purchaser shall take the same free and clear of all of the obligations of this judgment.
 "The said Lindsley shall be personally bound to account to said Gurley for the said Gurley's proportionate interest from the net profits of any such sale after making said deductions aforesaid. If said lands are sold at a loss such loss shall be charged against the remaining lands to each party and to the other owners in proportion to their respective interests.
 "That said Mound Lake lands are now under oil and gas lease and that said Rich Lake lands may be hereafter leased for oil or gas or other minerals. In the event that any oil or gas or other mineral should be produced on any of said lands and the said Gurley's proportionate interest in the royalties from any of said leases after deducting his proportionate share of taxes and other expenses should amount to a sufficient sum to liquidate the aforesaid indebtedness and additions thereto hereafter accruing the said Gurley shall after the liquidation of said indebtedness be entitled to receive his aforesaid proportionate shares of the net income from said lands, after deducting current taxes and other expenses. Plaintiff shall not have any lien on said lands to secure payments accruing to him hereunder the said Lindsley being personally obligated to see that said Gurley shall receive his said share of all income from said lands.
 "That after all said indebtedness is paid to the said Lindsley if oil or gas or other minerals are produced from said lands the said Lindsley shall make and execute proper division orders or other instruments which will enable the lessee to pay to said Gurley directed his proportionate share of said income. In the said case the said Gurley shall pay to said Lindsley his proportionate share of taxes and other expenses incurred by said Lindsley in the management and control of all of said lands.
 "That the parties have agreed that this obligation be binding on any assignee or transferee of the said Lindsley to whom any part of the mineral interests are assigned or conveyed except a transferee who also receives the fee simple title of said Lindsley in the interest conveyed. The obligation of this judgment shall also be binding on any assignee of the said Gurley who shall acquire said interest of said Gurley in the rights conferred by this judgment either by assignment or by operation of law.
 "That the parties have agreed that the obligations of this judgment shall also be binding upon the heirs, executors, administrators, devisees, legatees and assigns of the parties hereto.
 "It is ordered that judgment be entered herein as above set forth.
 "It is further ordered that the said Lindsley shall pay the costs of this action and that one-half of said costs shall be charged to the Mound Lake account to be paid by said Gurley out of his interest in the profits from the Mound Lake lands."
 
 
 [2]
 That is, half of the total from Rich Lake, and half of two-thirds from Mound Lake
 
 
 [3]
 Whether this meant simple or compound interest is raised by the Gurleys' cross-appeal
 
 
 [4]
 See Langford v. Shamburger, 392 F.2d 939 (5th Cir. 1968)
 
 
 [5]
 Article 2031b, Vernon's Ann.Tex.St
 "Act of engaging in business in state as equivalent to appointment of Secretary of State as agent
 "Sec. 3. Any foreign corporation, association, joint stock company, partnership, or non-resident natural person that engages in business in this State, irrespective of any Statute or law respecting designation or maintenance of resident agents, and does not maintain a place of regular business in this State or a designated agent upon whom service may be made upon causes of action arising out of such business done in this State, the act or acts of engaging in such business within this State shall be deemed equivalent to an appointment by such foreign corporation, joint stock company, association, partnership, or non-resident natural person of the Secretary of State of Texas as agent upon whom service of process may be made in any action, suit or proceedings arising out of such business done in this State, wherein such corporation, joint stock company, association, partnership, or non-resident natural person is a party or is to be made a party.
 "Doing business in state; definition
 "Sec. 4. For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation, joint stock company, association, partnership, or non-resident natural person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State."
 
 
 [6]
 Herbert P. Lindsley, in his capacity as executor of his father's estate, was found not liable
 
 
 [7]
 Because of complete diversity of citizenship, subject matter jurisdiction was conferred by 28 U.S.C. Sec. 1332
 
 
 [8]
 As already pointed out, the parties did not disagree about the income and the expenses
 
 
 [9]
 Contemporaneous to the judgment, Gurley and Lindsley executed an agreement that repeated the journal entry of judgment and stated Gurley's intention to execute quitclaims or whatever other deeds were needed to clear Lindsley's titles to the property in question. Texas applies a kind of parol evidence rule to judgments. See generally 33 Tex.Jur.2d Judgments Secs. 83-84 (1962). Since our construction of the judgment is consistent with the provisions in the agreement assuring the legal title would be vested in Lindsley, detailed examination of the agreement is unnecessary
 
 
 [10]
 The parties assume, and we agree, that the governing law is that of Texas
 
 
 [11]
 Footnote 5, supra
 
 
 [12]
 Thode, In Personam Jurisdiction; Article 2031b, the Texas "Long Arm" Jurisdiction Statute; and the Appearance to Challenge Jurisdiction in Texas and Elsewhere, 42 Tex.L.Rev. 279, 307-08 (1964)
 
 
 [13]
 Arguably the actions of the defendants are within the tort provisions of the longarm statute, but we pretermit discussion of that point
 
 
 [14]
 Though often courts will further examine the equities by weighing the relative convenience to the parties of litigating in the forum and any special interests which the forum may have in granting relief. See, e. g., Atwood Hatcheries v. Heisdorf & Nelson Farms, supra, 357 F.2d at 854 n. 23; Jetco Electronics v. Gardiner, 325 F.Supp. 80, 83 (S.D.Tex. 1971); Hearne v. Dow Badische Chemical Co., 224 F.Supp. 90 (S.D.Tex.1963). The balance of convenience is in favor of Texas, which is the situs of the land, the residence of some of plaintiffs, the place where the 1948 judgment was entered, and the state whose substantive law will apply to the determination of the rights and obligations under the judgment. Since title to and income from Texas lands is in issue, that state has a special interest in the relief granted
 
 
 [15]
 Texas does not have a statute for constructive service based on ownership of land, as do other states. See, e. g., Nonresident Property Owners Act of Pennsylvania, 12 P.S. Sec. 331, discussed in Gearhart v. Pulakos, 207 F.Supp. 369, 371-372 (W.D.Pa.1962)
 
 
 [16]
 Pirkle v. Cassity, 104 F.Supp. 318 (E.D.Tex.1952). Faulkner v. Reed, 241 S.W. 1002 (Tex.Comm.App.1922); Saner-Ragley Lumber Co. v. Spivey, 238 S.W. 912 (Tex.Comm.App.1922)
 
 
 [17]
 Additional reasons for finding suability arise from the stipulation entered into to avoid attachment. To prevent subjecting the land to attachment the foreign executor and administrator voluntarily, and with the consent of plaintiffs, substituted his personal commitment to make no transfer or encumbrance
 
 
 [18]
 Baber v. Houston National Exchange Bank, 218 S.W. 156 (Tex.Civ.App.1919), held that a New York executor who had notice of a prior suit in Texas concerning a stake held by a Houston bank, but was not a party, could not in a subsequent action sue the bank in Texas for disposing of the stake in accord with the judgment in the prior case
 
 
 [19]
 The scope of judgment which may be rendered against him is another matter, which we have already discussed
 
 
 [20]
 Art. 5069-1.02. V.A.T.S