**In the Matter of Glenn M. AYERS, Debtor.**

**COLONIAL-INTERSTATE, INC., Plaintiff,**

**v.**

**Glenn M. AYERS, Defendant.**

**Bankruptcy No. 86-30389.**
**Adv. No. 86-3022.**

United States Bankruptcy Court, M.D. Georgia, Athens Division.

Feb. 22, 1988.

Thomas A. Nash, Jr., Savannah, Ga., for plaintiff.

John Terry Brown, Commerce, Ga., for defendant.

MEMORANDUM OPINION ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

ROBERT F. HERSHNER, Jr., Chief Judge.

STATEMENT OF THE CASE

Glenn M. Ayers, Defendant, filed a petition for relief under Chapter 7 of the Bankruptcy Code on September 22, 1986. Colonial–Interstate, Inc., Plaintiff, is listed in Defendant's bankruptcy schedules as an unsecured creditor holding a disputed claim in the amount of $7558.51. On December 29, 1986, Plaintiff filed a complaint seeking to have its claim determined to be nondischargeable under section 523 of the Bankruptcy Code.[1]

The complaint came on for trial on June 24, 1987. The Court, having considered the evidence presented, now publishes its findings of fact and conclusions of law.

FINDINGS OF FACT

Plaintiff employed Defendant at its service station in Commerce, Georgia. In September of 1983, Plaintiff promoted Defendant to the position of service manager of the Commerce station. This adversary proceeding concerns the period of time from September of 1983 to March of 1985, during which Defendant served as station manager of the Commerce station.

Defendant's duties as station manager included making a daily deposit and com-

1. 11 U.S.C.A. § 523 (West 1979 & Supp.1987).

pleting a daily report on inventory. The daily deposits were to be made in cash only, as it was Plaintiff's policy not to allow station managers to deposit checks as part of the daily deposits. Therefore, Defendant was required to cash any checks received from customers before making the daily deposit. In September of 1983, Defendant opened an account in the name of Ayers Interstate at the First National Bank of Jackson County (Jackson Bank) for the purpose of cashing customer checks. Defendant used the account at the Jackson Bank for the purpose of cashing checks. No checks were written on the account at the Jackson Bank.

On September 29, 1984, Defendant opened an account at the First National Bank of Commerce (Commerce Bank). The account at the Commerce Bank was a personal account and not related to Defendant's service station. Defendant testified that he deposited his personal income in the account at the Commerce Bank. Defendant received income from his employment with Plaintiff and from cars that he sold as a sideline business. Although Defendant wrote some checks on the account at Commerce Bank for personal expenses, he testified that he paid a majority of his bills in cash.

After Defendant assumed the position of service station manager, he became aware of shortages in the money received at the station. Mr. James Doggett, a supervisor for Plaintiff, testified that the Commerce station had a history of shortages before Defendant became the station manager, and that two previous managers of the Commerce station had lost their jobs due to these shortages. Defendant initially reported some minor shortages [2] to Plaintiff, in accordance with company policy.[3] Defendant testified that he attempted to ascertain which, if any, of his employees was responsible for the shortages, however, he was unable to discover the cause of the shortages. Rather than continue reporting the growing shortages to Plaintiff, Defendant testified that he borrowed money to cover the shortages and did not indicate a shortage on his daily reports. It was the policy of Plaintiff that service station managers were responsible for paying to Plaintiff the amount of any shortages.

By September of 1984, the shortages at the Commerce station had increased and Defendant no longer felt capable of covering the shortages with his personal funds. Rather than inform Plaintiff of the shortages, Defendant developed a "check-kiting" scheme to camouflage the shortages. Defendant began writing checks payable to cash on his personal account at the Commerce Bank, cashing the checks at the Jackson Bank, and then sending the money to Plaintiff in the daily deposit. Defendant would then take money from the Commerce station over the next few days and deposit this money in his account at the Commerce Bank to cover the check which he had cashed at the Jackson Bank. Defendant did not indicate a shortage on his daily reports, therefore Plaintiff was kept unaware of the situation at the Commerce station.

Defendant continued writing checks payable to cash on the account at the Commerce Bank and cashing the checks at the Jackson Bank until February of 1985, at which time the Jackson Bank refused to cash any more checks for Defendant. Defendant then began writing checks on the account at the Commerce Bank and cashing these checks at the Northeastern Banking Company (Northeastern Bank) located in Commerce, Georgia. Apparently the Northeastern Bank would not cash checks for large amounts that were drawn on another bank and made payable to "cash," therefore Defendant began writing these checks to fictitious payees. Defendant would endorse the check in the name of the fictitious person, cash the check along with the checks received from customers, and

2. Mr. Doggett stated that Defendant did not report any shortages of more than fifty dollars, however Defendant stated that he reported one shortage of three hundred dollars.

3. Mr. Doggett testified that all service station managers were instructed to report any shortages to Plaintiff.

send the money to Plaintiff in the daily deposit.

Defendant continued to operate in this fashion until March 18, 1985. On the morning of March 18, 1985, Mr. James Doggett arrived at the Commerce station for the purpose of conducting a routine audit control. Defendant failed to appear for work on that day.[4] Mr. Doggett had the locks on the Commerce station changed on the evening of March 18, 1985. Defendant testified that, after learning from station employees that Plaintiff had changed the locks on the station, Defendant did not return to work because he "figured [Plaintiff] didn't want [him] up there." On March 19, 1985, Mr. Doggett was joined by Mr. Jack Kennedy, a supervisor for Plaintiff. Mr. Doggett and Mr. Kennedy conducted an audit of the Commerce station, which revealed a shortage of $7551.81.

## CONCLUSIONS OF LAW

■ Plaintiff contends that the debt owed it by Defendant is nondischargeable under section 523(a)(2)(A) and (4).[5] A creditor seeking to have a debt determined to be nondischargeable under section 523 bears the burden of proving each element by clear and convincing evidence. *Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir.1986); *Seepes v. Schwartz (In re Schwartz)*, 45 B.R. 354, 357 (S.D.N.Y.1985).

Section 523(a)(2)(A) provides that a debtor may not obtain a discharge from any debt "(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; ...." 11 U.S.C.A. § 523(a)(2)(A) (West Supp.1987). In *In re Hunter*,[6] the Eleventh Circuit Court of Appeals set forth the elements a creditor must establish under this section. The Eleventh Circuit stated:

> In order to preclude the discharge of a particular debt because of a debtor's false representation, a creditor must prove that: the debtor made a false representation with the purpose and intention of deceiving the creditor; the creditor relied on such representation; his reliance was reasonably founded; and the creditor sustained a loss as a result of the representation. The debtor must be guilty of positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality.[7]

■ On his Employee Data File, Defendant stated that he had never filed a bankruptcy petition. Defendant had, in fact, filed a bankruptcy petition in 1968 or 1969. The Employee Data File was completed on February 2, 1984, approximately five months after Plaintiff promoted Defendant to station manager. Plaintiff never indicated that it would not have allowed Defendant to remain a station manager if it had known of Defendant's prior bankruptcy petition. Thus, Plaintiff has failed to show by clear and convincing evidence that it relied on Defendant's representation that he had not previously filed a bankruptcy petition. Defendant's misrepresentation regarding his previous bankruptcy petition is insufficient to render his debt to Plaintiff nondischargeable under subsection (a)(2)(A).

■ Plaintiff next alleges that Defendant made false representations on his 1985 Federal and State Income Tax. Plaintiff has not shown that it relied to its detriment on these tax returns. The Court notes that Defendant had ceased to work for Plaintiff when Defendant completed his 1985 tax returns. Because Plaintiff has failed to establish that it relied on either the Em-

4. Defendant testified that he did not appear for work on March 18, 1985 because that was his birthday.

5. 11 U.S.C.A. § 523(a)(2)(A), (4) (West 1979 & Supp.1987).

6. *Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577 (11th Cir.1986).

7. *Id.* at 1579.

ployee Data File or Defendant's 1985 tax returns, the Court finds that Plaintiff has failed to meet its burden of proof under section 523(a)(2)(A).

Plaintiff also contends that Defendant's debt is nondischargeable under section 523(a)(4). Section 523(a)(4) excepts from discharge any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.[8]

Before the Court can determine a debt to be nondischargeable for fraud or defalcation under subsection (a)(4), the Court must find that Defendant was acting in a fiduciary capacity. Within the context of section 523(a)(4), a fiduciary relationship is a relationship based upon a technical or express trust. The fiduciary relationship required by the Bankruptcy Code is not one implied by contract or by the factual situation of the parties and the law, nor does it encompass ordinary commercial relationships such as debtor-creditor and principal-agent. *Farmers and Merchants Bank v. Brinsfield (In re Brinsfield)*, 78 B.R. 364, 369 (Bankr.M.D.Ga.1987) (citations omitted).

Plaintiff contends that a fiduciary relationship was created between the parties by virtue of Defendant's status as station manager and the terms of a Memorandum of Responsibility which Defendant signed when he became station manager of the Commerce station. The Memorandum of Responsibility provides:

> This will serve as a memorandum of [Defendant's] responsibility for the property and cash entrusted to [Defendant] as manager of the Interstate service station....
>
> [Defendant] understand[s] that the gasoline, oils, miscellaneous fixtures and other property entrusted to [Defendant's] care, together with the receipts from their sale and use, are, and at all times shall remain, the property of [Plaintiff] and that, as an employee of [Plaintiff], [Defendant has] no ownership interest in any of them.
>
> [Defendant has] agreed and [does] hereby agree to be responsible for and to pay to [Plaintiff] all losses of and shortages in cash, all losses resulting from any sale by [Defendant] on credit to parties named on the published stop credit list or from any credit extended by [Defendant] or [Defendant's] employees, and any losses of and shortages in gasoline, oil, miscellaneous fixtures, and other property entrusted to [Defendant's] care, as such shortages and losses are reflected by the regular inventories and station audits....

The Memorandum of Responsibility cannot be construed to create a technical or express trust. Use of the word "entrust" is insufficient to create a trust relationship with the incumbent fiduciary obligations. *See Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934) (resulting obligation is not turned into one arising from a trust because the parties have chosen to speak of it as a trust); *Borg-Warner Acceptance Corp. v. Miles (In re Miles)*, 5 B.R. 458, 6 Bankr.Ct.Dec. 805, 2 Collier Bankr. Cas.2d 892 (Bankr.E.D.Va.1980) (verbal legerdemain does not impose a fiduciary duty on the debtor); *Auto-Owners Insurance Co. v. Lipke (In re Lipke)*, 54 B.R. 704 (Bankr.W.D.Wis. 1985) (a party to an agreement should not be able to create a fiduciary relationship for purposes of discharge determination merely by inserting trust or fiduciary language in the agreement).

From the evidence presented, the Court is unable to discern the existence of a trust relationship. Plaintiff expressly retained legal title to all of the property in Defendant's possession. Defendant was not responsible for disbursing the funds collected, for preserving the estate, or for any of the other duties commonly associated with fiduciaries. In *In re Walker*,[9] the court stated:

> A service station manager, even though he has the responsibility of collecting the proceeds of sales from the

8. 11 U.S.C.A. § 523(a)(4) (West 1979 & Supp. 1987).

9. *Mullis v. Walker (In re Walker)*, 7 B.R. 563, 7 Bankr.Ct.Dec. 68 (Bankr.M.D.Ga.1980).

station accounting therefor and depositing cash amounts thereof, is not a fiduciary.

The relationship was one which might indeed lead to a trust implied by law, but that is less than is required by the statute. To hold otherwise would make the general managers of all retail outlets fiduciaries and that is not contemplated by the statute.[10]

This Court is persuaded that the reasoning of the court in *In re Walker* is applicable to the facts of the present adversary proceeding. Thus, the Court concludes that Defendant was merely an agent or factor of Plaintiff and as such Defendant did not assume a fiduciary capacity sufficient to render the debt nondischargeable.

Since the Court has determined that Defendant was not acting in a fiduciary capacity under an express or technical trust, the Court need not determine whether the elements of fraud or defalcation are present. Section 523(a)(4) also excepts from discharge any debt for embezzlement or larceny regardless of whether the debtor was acting in a fiduciary capacity. The Court must now determine whether Plaintiff has proven each of the elements of embezzlement or larceny.

Embezzlement is defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." 3 *Collier on Bankruptcy* ¶ 523.14[3] (15th ed. 1987). Section 16–8–4 of the Code of Georgia provides that a plaintiff seeking to prove embezzlement must establish that the property was converted to the defendant's own use.[11] From the evidence presented, the Court is unable to determine whether Defendant used any of the missing $7558.51 for his personal expenses. Plaintiff has failed to establish that Defendant even took the missing money. Mr. Doggett, who testified on behalf of Plaintiff, stated that the shortages could have been caused by service station employees or deliverymen. Plaintiff has proven that Defendant concealed the shortages, however, concealment is not tantamount to embezzlement.

Defendant did deposit funds from the Commerce station into his personal checking account at the Commerce Bank. These deposits, however, appear to correspond to checks that were cashed at the Jackson Bank. This money was then deposited in Plaintiff's account. Thus, even though Defendant commingled funds, the Court is unable to conclude that any of Plaintiff's money was used for any personal expenses of Defendant. Plaintiff has not proven the necessary elements of embezzlement.

Plaintiff has also not proven the elements of larceny. Larceny differs from embezzlement in that larceny requires that the original taking of the property be unlawful. 3 *Collier on Bankruptcy* ¶ 523.14[3] (15th ed. 1987). Defendant was lawfully in possession of Plaintiff's property when the shortages occurred, therefore Defendant could not be guilty of larceny. The Court concludes that Plaintiff has not met its burden of proof under section 523(a)(4).

Defendant requests that he be awarded costs in this adversary proceeding. Defendant has made no showing that he is entitled to such an award, therefore the request must be denied.

10. *Id.* at 564, 7 Bankr.Ct.Dec. at 69 (citations omitted).

11. Section 16–8–4 provides:

(a) A person commits the offense of theft by conversion when, having lawfully obtained funds or other property of another under an agreement or other known legal obligation to make a specified application of such funds or a specified disposition of such property, he knowingly converts the funds or property to his own use in violation of the agreement or legal obligation.

O.C.G.A. § 16–8–4(a) (1984).