In re P.T. EICHELBERGER, Jr., M.D. Debtor.

Jane Bailey HAYTON, Plaintiff,

v.

P.T. EICHELBERGER, Jr., M.D. Defendant.

Bankruptcy No. 87–03998–H5–7. Adv. No. 87–0831.

United States Bankruptcy Court, S.D. Texas, Houston Division.

June 8, 1989.

Candice S. Schiffman (Fulbright & Jaworski, of counsel), Houston, Tex., for plaintiff.

Reba A. Eichelberger, Baytown, Tex., for debtor.

## ORDER AND MEMORANDUM OPINION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

MARGARET A. MAHONEY, Bankruptcy Judge.

The issues I must resolve come before me by way of cross motions for summary

judgment in this adversary proceeding to determine the dischargeability of a debt owed by the debtor and defendant, P.T. Eichelberger, Jr., M.D., to the plaintiff, Jane Bailey Hayton, his former spouse. Pursuant to 28 U.S.C. § 157(a) and the District Court's Order of Reference, I have jurisdiction over this matter. The proceeding which plaintiff initiated to resolve the dispute between the parties is a core proceeding as that term is used under 28 U.S.C. § 157(b)(1) and (b)(2)(I). Upon review of the briefs and supporting documents of the parties, I am granting summary judgment to the plaintiff with respect to all issues raised in this proceeding. Debtor's motion for summary judgment consequently is denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A decree of divorce was entered with respect to the parties on December 14, 1979, which, among other things, awarded to plaintiff (Jane Hayton) an undivided one-half interest in debtor's accrued monthly pension under an ERISA governed pension plan. The Family Court determined that the value of debtor's accrued monthly pension was $1,325.73, which, based upon actuarial calculations as of the date of the decree, amounted to $261,320 of the total amount of the funds within the Plan. To insure protection of Ms. Hayton's community property award, the Family Court ordered the debtor to segregate the sum of $130,686 into a separate account, with all investment decisions left to the control of Ms. Hayton. Under the terms of the decree, Ms. Hayton was also given the rights and elections given to other beneficiaries of the pension plan. More importantly, for purposes of this summary judgment motion, the Family Court Judge imposed specific obligations upon Dr. Eichelberger:

Husband is appointed trustee for wife with respect to the Plan and to the segregated account in the Plan. As such trustee, he is ordered to deliver to wife, within ten (10) days of his receipt of the same, copies of all Plan reports and other documents received by him pertaining to said Plan.

As such trustee, he is further enjoined from amending the Plan in any manner that would result in limitations on wife's right to direct the investment of her segregated account or to reduce the value thereof ...

Dr. Eichelberger does not dispute certain factual allegations asserted by Ms. Hayton which are necessary to support her summary judgment motion. Although Dr. Eichelberger may have originally amended the plan in order to allow the segregation of his ex-wife's interest into a separate account, see Eichelberger v. Eichelberger, 584 F.Supp. 899, 900 (S.D.Tex.1984), both assert no segregated account was ever created. Dr. Eichelberger does not dispute that Ms. Hayton was not permitted to direct investments regarding the funds that were to be segregated. He also does not dispute that the assets and funds of the plan were transferred to a successor plan, the P.T. Eichelberger, Jr. Profit Sharing Plan. No segregated account representing Jane Hayton's interest in the successor plan was created. Ms. Hayton has been granted no control over investment decisions under the successor plan.

Dr. Eichelberger cannot dispute that his actions were in direct contravention of the terms and conditions of the divorce decree. He did not appeal the decision of the Family Court with respect to the divorce decree, and as between the parties the judgment is final.

On May 14, 1984, the U.S. District Court for the Southern District of Texas rendered a decision which is pivotal for purposes of this motion. In that action, Jane Hayton sought injunctive relief in order to control the segregated account and for damages for losses sustained through debtor's refusal to invest according to her instructions as well as debtor's refusal to supply information concerning the segregated account.

Although the Court abstained from reaching the merits of the relief requested by Ms. Hayton, the Court did reach the issue of whether ERISA preempted the Family Court from applying the community property laws of the State of Texas to

effect a division of property with respect to the plan. The Court held that "ERISA [had] not preempted the community property laws of the State of Texas upon the facts of this case." *Eichelberger v. Eichelberger*, 584 F.Supp. at 901. Dr. Eichelberger did not appeal the decision of the District Court with respect to the ERISA preemption issue. Jane Hayton, however, moved for a new trial, presumably on the issue of reaching the merits of the relief requested. Her motion for new trial was denied on June 24, 1986.

Debtor filed for relief under Chapter 11 of the Bankruptcy Code on April 23, 1987. On July 30, 1987, Ms. Hayton initiated this adversary proceeding by filing her complaint to determine the dischargeability of the debt at issue and seeking damages for violating the terms of the divorce decree. On May 11, 1988, I recommended that the U.S. District Court partially abstain from the proceeding, retaining only the determination of the dischargeability of the debt owed under 11 U.S.C. § 523(a)(4). Based upon my report and recommendation, the District Court abstained from hearing the damage, accounting, injunction, and disbursement issues which underlie the dischargeability action.

## II. DISCUSSION

In this dischargeability action, Jane Hayton does not seek to have me enforce the terms of the divorce decree. Nor does she seek a determination that debtor in his capacity as trustee and administrator of the Plan breached his fiduciary duties to her. Those issues are issues which, pursuant to the District Court's abstention order, must be decided in state court. Instead, Ms. Hayton seeks a determination that any damages suffered by her as a result of debtor's defalcation while serving in his individual capacity as plaintiff's trustee under the divorce decree are nondischargeable under 11 U.S.C. § 523(a)(4).

11 U.S.C. § 523(a)(4) provides that "[a] discharge under Section 727 [or] 1141 ... of this Title does not discharge an individual debtor from any debt ... for fraud or defalcation while acting in a fiduciary ca-

pacity." Thus, for purposes of Ms. Hayton's summary judgment motion, I must find that there exists no genuine issue of material fact as to existence of a fiduciary relationship flowing from the Dr. Eichelberger to Jane Hayton and that debtor's breach, if any, of his fiduciary obligations constitutes defalcation.

The question of what constitutes a fiduciary relationship for purposes of dischargeability has a long history. The Bankruptcy Act of 1841 contained a provision similar to Section 523(a)(4) and its predecessor Section 17(a)(4) of the Bankruptcy Act of 1898. The Supreme Court as early as 1844 held that for dischargeability purposes the fiduciary relationship must arise from "technical trusts, and not those which the law implies from the contract." *Chapman v. Forsyth* 43 U.S. (2 How.) 202, 207, 11 L.Ed. 236 (1844). The Supreme Court further defined the parameters of the concept of fiduciary when it held that the technical trust required by *Chapman* must exist prior to the act creating the debt and without reference to that act. *See Upshur v. Briscoe,* 138 U.S. 365, 378, 11 S.Ct. 313, 317, 34 L.Ed. 931 (1890). Justice Cardozo shed further light on this standard in *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934):

> "It is not enough that by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex-maleficio. He must have been trustee before the wrong and without reference thereto."

*Davis v. Aetna Acceptance Co.,* 293 U.S. at 333, 55 S.Ct. at 154.

Under both the Bankruptcy Act and the Bankruptcy Code, courts have consistently held that to be a fiduciary for purposes of dischargeability, the debtor must be a trustee under either an express or technical trust rather than a trust imposed ex-maleficio. *See, In re Teichman,* 774 F.2d 1395 (9th Cir.1985); *In re Johnson,* 691 F.2d 249 (6th Cir.1982); *In re Pedrazzini,* 644 F.2d 756 (9th Cir.1981); *In re Angelle,* 610 F.2d 1335 (5th Cir.1980); *In re Romero,* 535 F.2d 618 (10th Cir.1976); *In re Dloogoff,* 600 F.2d 166 (8th Cir.1979).

The distinction, then, between an express trust and a trust imposed ex-maleficio is that an express trust comes into existence prior to the act of wrongdoing from which the debt arose. A trust imposed ex-maleficio, on the other hand, springs into existence from the very act of wrongdoing and is applied constructively as a remedy for wrongdoing to prevent unjust enrichment.

■ The determination of whether a fiduciary relationship exists between a debtor as a trustee and a creditor as a beneficiary is controlled exclusively by federal law. *In re Angelle,* 610 F.2d at 1341. As noted, the crucial federal inquiry into whether a trust gives rise to a fiduciary relationship for dischargeability purposes turns on whether a trust is express or ex-maleficio. State law is important but not necessarily controlling in determining whether an express or technical trust exists. *Id.* The state may impose "trust-like obligations" on an individual, and such obligations may impose upon that individual the duties of trustee. *Id.* So long as the trust arises prior to and without reference to the wrong from which the creditor complains, the "fiduciary capacity" referred to in 11 U.S.C. § 523(a)(4) is present.

Although courts interpreting Section 523(a)(4) have invariably held that a debtor's "fiduciary capacity" must arise from an express or technical trust, for dischargeability purposes what constitutes such a trust is not clearly delineated. Under Texas law, the separation of legal title from the beneficial interest is the essential element of an express or technical trust. *Gurley v. Lindsley,* 459 F.2d 268, 276 (5th Cir.1972). Other requisites of an express or technical trust are that the beneficiary be capable of identification, the property subject to the alleged trust be specifically described and the duties of the alleged trustee be defined clearly enough that a court of equity will be able to enforce them. *Id.* A final attribute of an express or technical trust referred to by the courts is that such a trust is established by the express intent of the parties, with every legal element required to create an express trust agreed upon between the trustee and

the grantor of the trust. *Harris v. Sentry Title Co., Inc.* 715 F.2d 941, 946 (1983); *Jackson v. Hernandez,* 274 S.W.2d 131, 133 (Tex.Civ.App.—Galveston), *aff'd,* 155 Tex. 249, 285 S.W.2d 184 (1955).

■ Although the usual elements of an express trust include the party's intent to create a trust, a long line of case authority has held that an express or technical trust may be created by a statute which expressly imposes fiduciary obligations on a party. *In re Johnson,* 691 F.2d 249 (6th Cir.1982); *In re Romero,* 535 F.2d 618 (10th Cir.1976); *In re Kawczynski,* 442 F.Supp. 413 (W.D. N.Y.1977); *In re Whitlock,* 449 F.Supp. 1383 (W.D.Mo.1978); *Kwiat v. Doucette,* 81 B.R. 184 (D.Mass.1987); *In re Krank,* 84 B.R. 372 (Bankr.E.D.Pa.1988); *In re Janikowski,* 60 B.R. 784 (Bankr.N.D.Ill.1986). So long as the statute imposes a trust on specifically identifiable property and sets forth specific fiduciary duties, the intent of the purported "trustee" to assume a fiduciary capacity is irrelevant for purposes of dischargeability under Section 523(a)(4). *In re Johnson,* 691 F.2d 249, 253 (6th Cir. 1982). Under federal bankruptcy law, then, the requirement that a technical or express trust be present may be satisfied despite the absence of any intent on the part of the "trustee" to enter into a fiduciary relationship. The statutorily imposed fiduciary obligation substitutes, in my opinion, for the lack of intent on the part of the purported trustee.

## III. APPLICATION

■ I find that the intent of the Family Court was to create a technical or express trust to protect Jane Hayton's community property interests in Dr. Eichelberger's interest in his pension plan. First, the divorce decree specifically designated debtor as trustee for Ms. Hayton with respect to her community property interests in the plan. Second, the divorce decree imposed a trust on specifically identifiable property, namely one-half of debtor's interest in the plan or $130,686. Third, the decree sets forth specific fiduciary duties to be performed by Dr. Eichelberger, including segregating the decreed amount in a separate

account, providing copies of all plan reports and other germane information regarding the plan, and insuring that no limitations be placed on Ms. Hayton's right to direct the investment of the segregated account. I find that under the language of the decree a trust was established which by the nature of the language of the decree separated the legal title from the beneficial interest.

Although Dr. Eichelberger had no intent to assume a fiduciary capacity with respect to Ms. Hayton's interest in the plan, I believe that for purposes of federal bankruptcy law the Family Court's imposition of that capacity on him is sufficient as a matter of law to satisfy the requirements of an express trust. The "trust-like" obligations referred to by the Fifth Circuit in the case of *In re Angelle* are indisputably present. *In re Angelle*, 610 F.2d at 1341. Further, the three requirements of an express or technical trust referred to by the Fifth Circuit in interpreting Texas law are present. *Gurley v. Lindsley*, 459 F.2d at 276. Although the Family Court decree is not a statute which imposes fiduciary obligations, I am persuaded that an extension of existing case law is warranted in this case. I am satisfied that the state is not limited to imposing fiduciary obligations upon an individual by statute alone. Indeed, in the case of *In re Janikowski*, the debtor's fiduciary capacity derived from the State Supreme Court's disciplinary rules. *In re Janikowski*, 60 B.R. at 784.

I agree with the Ninth Circuit that as a general rule the exception to discharge in Section 523(a)(4) should not apply in connection with a property settlement agreement or divorce decree. *See, In re Teichman*, 774 F.2d at 1400. In the case before me, unlike the situation in the *Teichman* case, the language of the decree unequivocally established a fiduciary relationship rather than a creditor/debtor relationship between the spouses. The necessity for this relationship derives from the unique nature of a multi-employee pension plan and the difficulty, if not impossibility, of dividing the spouses' respective community interests in the plan without adverse tax consequences. The need for such a rela-

tionship will not ordinarily arise in the division of other marital property of the community since the spouses may usually take immediate possession of such property upon its division. The need for imposing an express or technical trust via a divorce decree will arise only when the beneficial and legal interest in a particular piece of community property cannot be vested immediately in the spouse awarded the property. Such a trust by its very nature can only come into existence prior to any wrongdoing on the part of the trustee. That is, the trust will not be a trust imposed ex-maleficio. There can be no dispute that the trust imposed by the divorce decree in the case before me is not a trust imposed ex-maleficio. Except for the lack of debtor's intent to assume the capacity of fiduciary, the trust imposed by the divorce decree has all the characteristics of an express or technical trust.

I do not believe that the narrow extension of Section 523(a)(4) I am imposing, if indeed it is an extension at all, will lead to a significant erosion of a debtor's present right to a discharge as Dr. Eichelberger suggests. The requirement that the trust have the traditional characteristics of an express or technical trust rather than the characteristics of a trust imposed ex-maleficio will continue to bar substitution of a constructive trust for an express or technical trust for purposes of Section 523(a)(4). Thus, there must be an identifiable trust res in which the legal interest is vested in one party with the beneficial interest vested in the other, rather than a mere debt, as well as fiduciary duties set forth in the decree with respect to the trust property. Finally, fraud or defalcation must exist on the part of the trustee which amounts to something more than simply the failure to satisfy a debt established under the divorce decree or property settlement.

Having determined that the language in the divorce decree created an express or technical trust which imposed certain fiduciary obligations on the debtor, I turn now to the issue of whether Dr. Eichelberger breached his fiduciary obligations in such a manner as to constitute defalcation. Al-

though debtor argues that Ms. Hayton has failed to offer summary judgment evidence sufficient to support a finding of defalcation, I view Dr. Eichelberger's admissions as sufficient to conclude as a matter of law that he defalcated while acting in his fiduciary capacity. Debtor fully admits that he failed to segregate funds into a separate account or invest such funds according to Jane Hayton's instructions. In addition, debtor does not dispute his ex-spouse's allegation that he converted the original plan, which was the subject matter of the divorce decree, to an intergrated profit-sharing plan, without establishing or maintaining a segregated account for Ms. Hayton's interest in the plan.

Debtor argues instead that he was justified in his actions because he determined as plan trustee that the divorce decree, a judgment debtor chose not to appeal, was preempted by ERISA and consequently null and void. This issue raises no genuine issue of material fact and can be disposed of as a matter of law. Judge Sterling's opinion holding that ERISA had not preempted the division of the spouse's community property interests in the Plan is, in my opinion, dispositive of debtor's argument. *See, Eichelberger v. Eichelberger,* 584 F.Supp. at 900. Debtor chose not to appeal the decision of the District Court on the ERISA preemption issue, and I believe he is therefore collaterally estopped to raise the issue here.

Debtor attempts to nullify the collateral estoppel effect of the District Court's ruling by invoking congressional amendments to ERISA detailing which domestic relation orders qualify so as to avoid the preemptive effect of ERISA. *See* 29 U.S.C. § 1056(d)(3); 29 U.S.C. § 1144(b)(7). The effective date of that amendment was December 31, 1984, which was subsequent to the date of the District Court entered its order holding that ERISA did not preempt the Family Court's division of the parties' community property interests in the plan. Retirement Equity Act of August 23, 1984, Pub.L. No. 98–397, 1984 U.S.Code Cong. & Admin.News (98 Stat.) 2547. I am persuaded that Judge Sterling's final order is controlling with respect to the issue of

ERISA's preemption of the divorce decree before me. Whether it qualifies as a "qualified domestic relations order" as that term is defined in 29 U.S.C. § 1056(d)(3) is irrelevant to the issue of debtor's defalcation while acting in a fiduciary capacity.

Even if the amendments to ERISA retroactively apply to render the opinion of the District Court nonbinding with respect to the preemption issue, debtor nonetheless cannot evade his failure to perform his fiduciary obligations to plaintiff by relying on his determination that the decree was not a qualified domestic relations order. Section 303(d)(2) of the Retirement Equity Act provides that a plan administrator may treat any [pre–1985 domestic relations order] as a qualified domestic relations order even if such order does not meet the [statutory] requirements. Dr. Eichelberger's fiduciary relationship to Ms. Hayton, in my opinion, made it incumbent upon him to recognize the divorce decree as a qualified domestic relations order, rather than approaching his ex-spouse from the position of an adversary.

Defalcation as that term is used in 11 U.S.C. § 523(a)(4) may result from a mere deficit resulting from the debtor's misconduct. *In re Janikowski,* 60 B.R. 784, 789 (Bankr.N.D.Ill.1986). It is no defense that the debtor derived no personal gain and defalcation may result through the debtor's negligence rather than his misconduct. *In re Cowley,* 35 B.R. 526, 529 (Bankr.D.Kan.1983). Defalcation has been defined as broadly as the failure by a trustee to properly account for funds entrusted to him. *Carey Lumber Co. v. Bell,* 615 F.2d 370, 376 (5th Cir.1980); *In re Borbidge,* 90 B.R. 728, 736 (Bankr.E.D.Pa. 1988). As a matter of law, I hold that debtor's failure to segregate plaintiff's funds and invest those funds according to plaintiff's instructions as well as debtor's termination of the plan and subsequent conversion to an integrated profit-sharing plan constitutes defalcation under Section 523(a)(4). Although debtor claims there is no portion of the funds within the plan that has been subject to his defalcation in the sense of depletion, the whole pattern of

debtor's behavior evidences an intent to deprive plaintiff of her entire interest in the plan.

I, therefore, hold that no genuine issue of material fact exists with respect to the issue of debtor's fiduciary capacity under the divorce decree and debtor's defalcation while acting in his capacity as a fiduciary to Ms. Hayton. Any damages suffered by Ms. Hayton as a result of debtor's breach of his fiduciary obligations while serving as plaintiff's trustee under the divorce decree are held nondischargeable under Section 523(a)(4). All relief requested by defendant is denied.