**In re Michael F. FRICK, Debtor.**

**Sara Joyce FREEMAN, as guardian of the property of Gail Robin Jordan, and Gail Robin Jordan, Plaintiffs,**

**v.**

**Michael F. FRICK, Defendant.**

**Bankruptcy No. 96–04984.**
**Adv. No. 96–80042.**

United States Bankruptcy Court,
N.D. Florida.

March 11, 1997.

T.A. Borowski, Jr., Pensacola, FL, for Plaintiff.

Amy L. Sliva, Pensacola, FL, for Defendant.

### ORDER AND JUDGMENT OF DISCHARGEABILITY

MARGARET A. MAHONEY, Chief Judge.

This matter came before the Court for trial on February 25, 1997. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). For the reasons indicated below, the Court finds that the debt owed by the defendant, Michael F. Frick, to the plaintiffs, Sara Joyce Freeman and Gail Robin Jordan, is dischargeable pursuant to 11 U.S.C. § 523(a)(4) and § 523(a)(2)(A).

### FACTS

Gail Robin Jordan ("Jordan") lived in Hawaii with her husband, Herman W. Jordan, until he died on July 20, 1989. He left Ms. Jordan and their son, John Jesse Jordan, a substantial estate. The estate was divided between a marital trust of which Jordan is the beneficiary, and a family trust of which John Jesse is the beneficiary. Jordan was named the trustee of the marital trust and the personal representative of Herman Jordan's estate.

Three years after Herman Jordan's death, Jordan was placed under a guardianship by her mother, Sara Joyce Freeman ("Free-

man"), due to Jordan's drug and alcohol addiction. On February 14, 1992, Freeman and Jordan entered into an agreement with Saltmarsh, Cleaveland & Gund, P.A. ("Saltmarsh"), an accounting firm, to serve as successor trustee of the marital trust of Jordan and successor personal representative of Herman Jordan's estate which was not yet closed.

The Saltmarsh firm did everything for the trust. It invested the money; it paid Jordan's bills. The partner who performed all of the services required of Saltmarsh as trustee and personal representative was Michael F. Frick ("Frick").

In September 1992, Jordan was released from treatment and sought reinstatement as trustee of the marital trust. On September 11, 1992, that reinstatement was accomplished. In attendance at the meeting at which the termination document was signed were Jordan, Frick, two brokers, and the trust's attorney. At no time did Jordan replace Saltmarsh as personal representative of Herman Jordan's estate. Also, Saltmarsh continued providing accounting services for Jordan individually and for the marital trust until early in 1993.

On September 22, 1992, eleven days after Jordan resumed responsibility for the trust, she loaned Frick $120,000. Frick asked Jordan for the money at a meeting only attended by the two of them. He made no false statements about his finances or the purpose of the loan. He provided no financial statement to her. The evidence of the loan is an unsecured promissory note from Frick to Jordan individually at 10% interest.[1] The note was drafted by Frick's attorney. He knew that the trust was represented by a lawyer, yet he did not tell Jordan to consult with counsel before entering into the loan. Frick knew that Jordan was recently released from treatment and knew of her history of drug problems.

Jordan trusted Frick completely. Even after her reinstatement as trustee, she still sought his counsel and advice on many matters. After her reinstatement as trustee, she testified "nothing changed" in their relationship. He was still heavily involved in her finances. Frick testified that after the reinstatement, Jordan signed all the checks and determined what bills she wished to pay or not pay. He corroborated her testimony that otherwise the relationship changed little.

The loan constituted approximately 10% of the liquid assets of the trust. To fund the loan, the trust liquidated virtually all of its investment account at A.G. Edwards & Co. in a one or two-day period. Prior to this liquidation, the trust, at Saltmarsh's direction, had been pursuing an investment strategy of preservation of capital and growth. The broker characterized the policy as one with an element of risk aversion and safety to it.

Frick made 15 payments on the loan—not all in a timely manner—and then defaulted. He currently owes $112,046.30 on the note together with interest which has accrued for the past three years.

The estate of Herman Jordan had very few assets in it during the time Saltmarsh was personal representative and Frick did no work for the estate. Almost all of the assets of the estate were transferred into the marital or family trust as soon as possible. Frick testified that only several hundred dollars were in the estate during 1992 or 1993, and those funds were moved into the trust at some point. It is unclear whether the estate money was moved to the trust before or after September 11 or 22, 1992. However, the probate file was not closed until at least 1993. It is clear that the loan to Frick was made solely from trust funds, not estate funds, held at A.G. Edwards.

In 1994, Thomas Bizzell was retained as the accountant for the marital trust and Jordan individually. He found several problems in the trust's accounts, accountings, and treatment of the Frick note.

1. The 1992 tax return did not list Frick as the payor of the note to the trust as the tax return instructions require. Bizzell thinks the note is listed as "Note Receivable" in the return. Frick testified that the note is not listed at all.

---

1. The loan was treated, for tax purposes, as if a distribution of $120,000 was made from the trust to Jordan individually. She then loaned the money to Frick.

2. The June 30, 1993 compilation financial statement of the trust does not list the note as an asset and does not contain the disclosure required by American Institute of Certified Public Accountants that the accounting firm is not independent due to the note.

3. No state intangible tax returns were filed due to the note as required by law.

4. No documentary stamps were placed on the note as required by law.

Bizzell gave his expert opinion that Frick breached his fiduciary duty as a trustee in recommending the loan. He also opined that Frick breached his duties as an accountant for the trustee and as accountant for Jordan individually in recommending the loans. Bizzell testified that, in all cases, it is a clear conflict of interest for a trustee to make a loan to a fiduciary or a fiduciary's advisor.

On July 11, 1996, Frick filed a Chapter 7 bankruptcy case. Jordan filed this adversary proceeding as a result.

## LAW

■ The plaintiff, Jordan, seeks to have Frick's debt to her declared nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(4). It is the plaintiff's burden to prove her claims by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

### 523(a)(2)(A)

■ Section 523(a)(2)(A) provides that a debt is nondischargeable if money was obtained by "false pretenses, a false representation, or actual fraud." Jordan must establish that Frick made a false representation, and that Jordan sustained a loss because of it. *In re Cram,* 178 B.R. 537 (Bankr. M.D.Fla.1995). Evidence of intent to deceive may be inferred from the totality of the circumstances. *In re Pollitt,* 145 B.R. 353 (Bankr.M.D.Fla.1992). In this case, Jordan did not prove that anything Frick told her at the time of the loan was not true. The loan was an unwise decision, but Frick did not induce her to give it by fraud. Jordan trusted Frick; her trust caused her to ask no questions. Therefore, since there was no fraud shown, Jordan did not prove that the debt met all of the requirements for nondischargeability under 11 U.S.C. § 523(a)(2)(A).

### 523(a)(4)

■ Section 523(a)(4) provides that a debt for "fraud or defalcation while acting in a fiduciary capacity" is nondischargeable. Two elements must be present: (1) fraud or defalcation by the debtor (2) while he or she is acting as a fiduciary.

Two lines of cases—one recent and one old—interpret this section. The two theories each focus on a different word in Section 523(a)(4). The theories when applied to this case lead to different results.

### A.

One view of Section 523(a)(4) arises from the case law interpreting 11 U.S.C. § 35(a)(4) of the Bankruptcy Act which stated that:

A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as ... were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity.

This case law focuses on the term "fiduciary" and interprets that word more narrowly than state law or general usage might typically define it.

The traditional definition of fiduciary, involving a person who stands in a special relationship of trust, confidence, and good faith, is "far too broad for the purpose of bankruptcy law." [Cites omitted.] Rather, beginning with the Supreme Court decisions in *Chapman v. Forsyth,* 43 U.S. (2 How.) 202, 11 L.Ed 236 (1844) and *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), courts have held that the fiduciary relationship referred to in section 523(a)(4) is limited to instances involving express and "technical" trusts.

*Windsor v. Librandi (In re Librandi),* 183 B.R. 379 (Bankr.M.D.Pa.1995). Many of the cases strictly defining a fiduciary as a trustee couple it with a broad definition of "defalcation." A "defalcation" may be an innocent

default "so as to include all fiduciaries who for any reason were short in their accounts." *Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510 (C.C.A.2 1937) (Judge Learned Hand interpreting 11 U.S.C. § 35(a)(4)).

The narrow interpretation of fiduciary with the broad interpretation of defalcation ensures that the window of liability opens infrequently. Only trustees with entrusted funds in clearly defined trusts are covered.

The "trustee theory" of Section 523(a)(4) explains who is potentially liable as follows:

Under both the Bankruptcy Act and the Bankruptcy Code, courts have consistently held that to be a fiduciary for purposes of dischargeability, the debtor must be a trustee under either an express or technical trust rather than a trust imposed ex-maleficio. See, *In re Teichman,* 774 F.2d 1395 (9th Cir.1985); *In re Johnson,* 691 F.2d 249 (6th Cir.1982); *In re Pedrazzini,* 644 F.2d 756 (9th Cir.1981); *Matter of Angelle,* 610 F.2d 1335 (5th Cir.1980); *In re Romero,* 535 F.2d 618 (10th Cir.1976); *Matter of Dloogoff,* 600 F.2d 166 (8th Cir. 1979). The distinction, then, between an express trust and a trust imposed ex-maleficio is that an express trust comes into existence prior to the act of wrongdoing from which the debt arose. A trust imposed ex-maleficio, on the other hand, springs into existence from the very act of wrongdoing and is applied constructively as a remedy for wrongdoing to prevent unjust enrichment.

*Hayton v. Eichelberger (In re Eichelberger),* 100 B.R. 861, 863–864 (Bankr.S.D.Tex.1989). *Accord, Morgan v. Musgrove (Matter of Musgrove),* 187 B.R. 808 (Bankr.N.D.Ga. 1995).

The *Eichelberger* and *Musgrove* cases hold that the express or technical trusts include statutorily created trusts as well. *Eichelberger,* 100 B.R. at 864; *Musgrove,* 187 B.R. at 814. "So long as the statute imposes a trust on specifically identifiable property and sets forth specific fiduciary duties, the intent of the purported 'trustee' to assume a fiduciary capacity is irrelevant for purposes of dischargeability under Section 523(a)(4)." *Eichelberger,* 100 B.R. at 864. The Eleventh

Circuit Court of Appeals agreed with this view in *Quaif v. Johnson,* 4 F.3d 950, 951 (11th Cir.1993) (commercial insurance agent obligated by statute to account "in his fiduciary capacity" for premiums received was a fiduciary under 11 U.S.C. § 523(a)(4)).

What is the result of the courts defining Section 523(a)(4) in terms of trusts? If a "fiduciary" for Section 523(a)(4) purposes is solely a person who controls an express, technical or statutory trust, then a loss of the entrusted funds or property by the fiduciary acting as a fiduciary is a defalcation. "It is axiomatic that before there can be a trust, there must be a responsibility or particular property entrusted to the fiduciary for the benefit of another. *(In re Hamilton),* 147 B.R. 779, 783 (Bankr.D.Colo.1992), *aff'd,* 46 F.3d 1151 (10th Cir.1994), *accord, Librandi, supra* (and cases cited therein).

### B.

The second, newer line of cases, proceeds from a narrow definition of "defalcation" and a broader definition of "fiduciary." These cases proceed from the holdings in two Seventh Circuit Court of Appeals cases. In *Matter of Marchiando,* 13 F.3d 1111 (7th Cir.1994), the court held that a store owner who received proceeds from the sale of lottery tickets was not a "fiduciary" under Section 523(a)(4) although the language of the relevant statute established what would be a "statutory trust" under the trustee theory above. The court explained that a fiduciary relationship required the existence of a duty to another before the wrong occurred and "a difference in knowledge or power between fiduciary and principal." *Marchiando,* 13 F.3d at 1116. The court went on to further describe a fiduciary covered by Section 523(a)(4) as one who

... may know much more by reason of professional status, or the relation may be one that requires the principal to repose a special confidence in the fiduciary.

*Marchiando,* 13 F.3d at 1116. The court sought to prevent governmental units from legislatively making many duties owed to the government "statutory trusts" which are nondischargeable under Section 523(a)(4)

simply because a statute decrees it to be so. *Marchiando* in one sense sought to narrow the definition of fiduciary by describing it in terms of a special relationship; however, in doing so it opened the door to non-trust related liability.

In the case of *Meyer v. Rigdon*, 36 F.3d 1375, 1385 (7th Cir.1994), the Seventh Circuit held that "a mere negligent breach of a fiduciary duty is not a 'defalcation' under section 523(a)(11) [of the Bankruptcy Code]." Section 523(a)(11) is an amendment to the Code enacted in 1990. However, it uses the same phrase—defalcation while acting in a fiduciary capacity—used in Section 523(a)(4). This case narrowed the window the Court had opened in *Marchiando,* and narrowed the people covered in a different way than the prior trustee theory did. The case details prior case law on the issue and indicates that the Sixth Circuit Court of Appeals and possibly the Fifth Circuit agree with a narrowed definition of a defalcation as a willful or reckless breach of fiduciary duty. *In re Johnson,* 691 F.2d 249 (6th Cir.1982); *Matter of Moreno,* 892 F.2d 417 (5th Cir.1990). In *Quaif v. Johnson,* the Eleventh Circuit case, finding an insurance agent's debt to the insurance company for whom he held third party's insurance premiums nondischargeable due to his statutory trust duties under Georgia law, recognized the split of authority under Section 523(a)(4) as to the definition of defalcation. *Quaif,* 4 F.3d at 955. However, the Eleventh Circuit did not resolve which side of the split in authority it favors since it held Quaif's conduct was clearly beyond negligent defalcation.

The narrowed scope of defalcation to willful or reckless breaches of fiduciary duty explained in *Rigdon* and the expanded definition of fiduciary in *Marchiando* prompted several courts to push into new territory the boundaries of Section 523(a)(4) nondischargeability.

This Court has found two cases which found liability on professionals who breached duties to third parties under Section 523(a)(4) in which there were no trust funds or other trust assets which were lost. *Tudor Oaks Ltd. Partnership v. Cochrane (In re Cochrane),* 179 B.R. 628, 634 (Bankr.D.Minn.1995)

("[T]he professional's [attorney's] fiduciary duty of forbearance is not limited to situations involving segregated, entrusted assets"); *Harsch v. Eisenberg (In re Eisenberg),* 189 B.R. 725, 731 (Bankr.E.D.Wis. 1995) (attorney's failure to provide benefit plan participants with statutorily and plan required information when he was plan trustee and administrator resulted in state court compensatory damage award which bankruptcy court held was nondischargeable even though all required plan benefits were paid to beneficiaries). No trust monies were present in these cases but the attorneys were found to be fiduciaries because the attorneys "failed to meet an obligation." Such a failure constituted a defalcation. BLACK'S LAW DICTIONARY 417 (6th ed. 1990) (the definition of defalcation includes "the failure to meet an obligation").

> [A]s a matter of ... nonbankruptcy law [in Minnesota and the Eighth Circuit], one thing is absolutely clear: the concept of "fiduciary" is broader than the concept of "trustee under an express trust."

*Cochrane,* 179 B.R. at 634.

### C.

This Court concludes either the trustee theory or the defalcation theory could be sustained by the language of the statute. In many cases, it will make no difference which theory is used. The cases which are problematic are like this one—professionals who act knowingly or recklessly in violation of their ethical duties, but who hold no trust funds. Their defalcation is "a failure to meet an obligation" to a client. Frick at least recklessly violated his duties of good faith to Jordan and the trust in receiving the loan. He also violated accounting standards in the preparation of the compilation of the trust's financial statement without discussing his lack of independence. He violated his duties to the trust and Jordan by failing to file proper state intangible tax returns and by failing to obtain documentary stamps. If this Court follows the "defalcation" theory, Frick's debt to Jordan would be nondischargeable. Frick failed to meet his obligations to Jordan when he had her trust and

confidence and had a professional responsibility to her.

 However, if the Court subscribes to the "trustee" theory, Frick is not a trustee of an express, technical or statutory trust. Frick himself was never the trustee of the Jordan trust; Saltmarsh was. But even if he was trustee by virtue of his actions on behalf of Saltmarsh, it makes no difference. Saltmarsh was no longer trustee of the Jordan trust on September 22, 1992, when the loan to Frick was made, having been terminated on September 11, 1992. On that date, Jordan resumed the decision making functions of a trustee. As of September 11, 1992, there was no express or technical trust over which Frick or Saltmarsh exercised control. The relationship was ended. Therefore, Section 523(a)(4) cannot apply to any relationship arising from the Jordan trusteeship. The Termination Agreement did indicate that Saltmarsh would be "relieved of ... further liability as Successor Trustee" only when an accounting was rendered to Jordan. Jordan argued that that retained liability meant that Saltmarsh retained fiduciary duties to Jordan as well. However, the language is clear that what was retained was liability, not control. Control is what causes a fiduciary to incur a nondischargeable debt for defalcation under the "trustee" theory. Without the control of monies of a beneficiary prior to and concurrent with the defalcation, there is no fiduciary relationship which is actionable under the fiduciary theory of Section 523(a)(4). Jordan also argued that the relationship remained the same after the trust termination, but it did not. Even if Frick was enormously influential in the decisions made by Jordan, he did not control the trust. After termination, he is like numerous other debtors who have convinced innocent parties to foolishly part with their monies. Such debtor-creditor relationships are not covered by Section 523(a)(4). *Colonial–Interstate Inc. v. Ayers (Matter of Ayers)*, 83 B.R. 83, 87 (Bankr. M.D.Ga.1988); *Hartwood Aviation Inc. v. Hamilton (In re Hamilton)*, 147 B.R. 779, 784 (D.Colo.1992).

 Saltmarsh was also the personal representative of the Jordan estate. Frick did all of the work and exercised the duties of the personal representative for Saltmarsh. This relationship was in effect when the loan to Frick was made. However, no monies, or minimal monies, were in the estate at the time of the loan. Frick's actions did not affect the corpus of the estate. Since Frick's loan was made from the trust assets only, he did not cause a defalcation in the funds of the estate.

 Finally, Jordan claims that Frick's role as accountant for the trust and for her is sufficient to find grounds for nondischargeability. Professionals such as attorneys and accountants have been held to have a fiduciary relationship with their clients. *Cochrane*, 179 B.R. at 634 (numerous cites of cases involving attorneys found to be fiduciaries); *In the Matter of Trust America Service Corporation*, 175 B.R. 413 (Bankr.M.D.Fla.1994) (accountants for unsecured creditors' committee owed fiduciary duty to creditors). This role creates the quandary the Court is in. If the defalcation view is correct, Frick is liable. If a trust is necessary, he is not.

### D.

The Northern District of Florida Bankruptcy Court has followed the "trustee" theory line of cases to date. *Savonarola v. Beran*, 79 B.R. 493 (Bankr.N.D.Fla.1987); *Rishell v. Davis (In re Davis)*, 115 B.R. 346 (Bankr.N.D.Fla.1990). The Eleventh Circuit Court of Appeals, although recognizing that a split in authority exists, has ruled based on the trustee theory. *Quaif*, 4 F.3d at 953. The case law upon which the trustee theory is based commenced over one hundred years ago. That case law was known when Congress enacted the Bankruptcy Code in 1978 and chose to use language identical to that used in the prior law.

 This Court will follow the established trustee theory. Although equity might suggest that the newer theory is useful because it includes more professionals who act badly within its scope, the impact of such a redefinition is wide and the decision should be left to Congress or a court above this one.

### CONCLUSION

It is unfortunate that Frick's actions, which are certainly unethical, and are severe

breaches of confidence are not sufficient to hold him liable to Jordan after bankruptcy. However, to extend the scope of Section 523(a)(4) generally to acts of malpractice or unethical conduct of professionals goes well beyond the longstanding precedents of courts in this circuit and the U.S. Supreme Court. The Court concludes that section 523(a)(4) has been conservatively applied with good reason. Otherwise, the fresh start policy of bankruptcy is seriously eroded for an entire class of debtors. Michael Frick's debt to Gail Jordan, based upon the promissory note of September 22, 1992 is dischargeable.

THEREFORE, IT IS ORDERED and ADJUDGED that the plaintiffs, Sara Joyce Freeman and Gail Robin Jordan, shall take nothing by their complaint against the defendant, Michael F. Frick, and his debt to them based upon the promissory note of September 22, 1992 is DISCHARGED by the debtor's bankruptcy case.